German American Bank, Respondent, vs. Webster Manufacturing Company, Appellant.

*October 5, 1910—January 10, 1911.*

*Logs and timber: Sale: Entire contract: Part performance: Time for delivery: Breach by vendee.*

1. A contract for the sale and delivery of all standing timber on certain lands at specified prices provided that $5 per thousand feet should be paid on the 15th of each month for all logs skidded during the prior month; that a second payment at a certain rate per thousand feet should be made each week for logs loaded on cars during the previous week; that delivery of all logs which should be logged in each of two seasons should be completed on

or before May 1st in each year; and that "as soon as all logs shall have been delivered and received" by the vendee "settlement shall be made for the balance due," the vendee having an option to give its notes for such balance. The parties made a settlement for the logs delivered during the first season. *Held*, that the contract was not entire but apportionable, and that delivery of all the logs was not a condition precedent to the vendors' right to enforce payment for those actually delivered during the second season.

2. The contract not requiring all the logs to be delivered by May 1st in the second season, the vendors had a reasonable time after that date to deliver the logs not theretofore logged.

3. Breaches of the contract by the vendee in failing and refusing to make the stipulated payments and settlement gave the vendors a right to treat the contract as terminated and to dispose of the undelivered logs and uncut timber in some other way.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Affirmed.*

This is an action to recover an amount alleged to be due from the defendant company on a contract made between it and Fay L. Cusick & Co. The plaintiff seeks to enforce a lien held by it on timber embraced in the contract. By the contract Fay L. Cusick & Co. sold to the defendant about 3,000,000 feet of oak saw logs and about 1,000,000 feet of other saw logs, intending thereby to sell and deliver all the standing timber owned and controlled by Fay L. Cusick & Co. on the premises specified in Bayfield county. The contract price to be paid by the defendant to Fay L. Cusick & Co. was $23.75 per thousand feet (log measure) for oak logs and $12 per thousand feet (log measure) for all other logs. Payment was to be made as follows: $5 per thousand on the 15th of each month for all logs skidded during the prior month, the second payment to be made on Thursday of each week at the rate of $10 and $5 per thousand, respectively, for oak or other logs loaded on cars at stations specified in the contract during the previous week, pursuant to statements furnished to defendant showing the number of cars and giving statements with the number of pieces in each car. Fay L. Cusick & Co.

agreed to load the cars and consign the logs to the defendant at Superior, Wisconsin. It was agreed that:

"Delivery of all said logs which shall be logged during the season of 1906–7 shall be completed on or before May 1st, 1907, and delivery of all of said logs which are logged during the season of 1907–8 shall be completed on or before May 1st, 1908, and no more than eight (8) cars shall be shipped in any one day."

It was further agreed: "As soon as all logs shall have been delivered and received by the party of the second part, settlement shall be made for the balance due," the defendant having an option to settle for the balance by notes due in four to six months.

It appears that Fay L. Cusick & Co. logged, shipped, and delivered a part of this timber to the defendant during the season of 1906–7. The jury found that settlement had been made for this between the parties in the summer of 1907. In September, 1907, Olson & Carlson acquired by transfer from Fay L. Cusick & Co. the property in the remaining timber, and through assignment of the contract assumed its obligations, and later in the year, by agreement with the defendant, made some modifications of the contract, which, however, are not involved in the disputed issues here. Olson & Carlson proceeded to execute the contract, and during the logging season of 1907–8 delivered to the defendant before May 1, 1908, a large quantity of logs, on which there remained unpaid on May 1, 1908, the sum of $6,217.72. The plaintiff bank has obtained assignments from Fay L. Cusick & Co. and Olson & Carlson of this alleged unpaid amount for delivered logs.

It is shown that owing to the winter season of 1908 being unfavorable for logging and shipping, Olson & Carlson did not get all the lumber cut and logged, and about 400,000 feet of logs which were cut and skidded were left in the woods. It appears that defendants refused payment for this or any

amount for the logs delivered before May 1, 1908, upon the
ground that the contract called for delivery of all the logs em-
braced in the contract of the sale of the timber by May 1,
1908. At an interview between the defendant's president
and Olson about June 1, 1908, and repeatedly thereafter, the
president declined to make payment of any unpaid balance
for logs received by them, because he claimed there was a pro-
vision in the contract that all logs were to be delivered on or
before May 1, 1908. It also appears that in these negotia-
tions and communications between the defendant's president
and Olson & Carlson and their representatives in the month of
June, 1908, and continuing into the month of September, the
defendant persistently refused payment of the balance on the
logs delivered, and refused to pay the contract price for the
undelivered oak logs.

The plaintiff claims the right to recover the unpaid bal-
ance on the logs actually delivered to the defendant. The de-
fendant denies this liability, and alleges by way of answer
that the contract was breached by failure of the vendors of the
timber to deliver the logs as required during the season of
1906–7 and 1907–8; that no settlement was made for the
breaches of the contract before August 1, 1907; that the con-
tract is not apportionable, and requires that all logs covered
by the contract be delivered on or before May 1, 1908. It is
further alleged by way of counterclaim that it was damaged
by the vendors' defaults and breaches of contract, and recov-
ery is demanded.

The case was tried before the court and a jury. After the
testimony had been closed the court held that there was a bal-
ance unpaid on the logs delivered to defendant of $6,207.72,
and submitted the case to the jury on other issues, and the
jury found that the parties to the contract had settled up to
May 1, 1907, for the logs and all damages, if any were sus-
tained by the defendant, under the contract, and that defend-
ant sustained no damages because the logs were not in fact

all delivered by May 1, 1908.     Upon the verdict plaintiff was awarded a judgment to recover the amount of $6,207.72, with interest and costs.     This is an appeal from such judgment by defendant.

*H. V. Gard,* for the appellant.

*Edgar L. Wood,* attorney, and *W. R. Foley,* of counsel, for the respondent.

The following opinion was filed October 25, 1910:

SIEBECKER, J.     The appellant's first contention is that the court erred in holding the contract apportionable, thereby making defendant liable to pay for the logs actually delivered without requiring the vendors to deliver all of the logs as a condition to enforce payment of the balance of the purchase price for those delivered prior to May 1, 1908.     True, the parties made a sale of all the timber on the specified lands, but the contract does not specify that delivery of all the logs should be made before payment should be made for those actually delivered.     The subject matter of the contract is in its nature readily severable, and was so treated in fixing part payment for the logs as the work progressed.     The parties thus apportioned the consideration in conformity to the actual execution of the contract.     That the parties intended to apportion it is also evidenced by their conduct in paying for the logs actually delivered the first season, and by settling their mutual claims arising as to those delivered during the first logging season.     *Kerslake v. McInnis,* 113 Wis. 659, 89 N. W. 895; *Badger State L. Co. v. G. W. Jones L. Co.* 140 Wis. 73, 121 N. W. 933; *Malueg v. Hatten L. Co.* 140 Wis. 381, 122 N. W. 1057; *National K. Co. v. Bouton & Germain Co.* 141 Wis. 63, 123 N. W. 624.

It is urged that the provisions of the contract providing that, "as soon as all logs shall have been delivered and received by the defendant, settlement shall be made for the balance due," and requiring the vendors to accept defendant's notes

in payment, evinces an intent that the contract was to be treated as an entire one.    This in no way negatives the apportionable nature of the contract.    It was evidently inserted to fix a time and to compel the defendant to make a speedy final settlement when the contract was wholly executed, and to provide that the vendors should accept defendant's notes in place of a cash payment.

Nor does the stipulation in the contract providing that delivery of all the logs which were logged each season should be completed by May 1st support defendant's contention that the contract was not severable.    There is nothing in this provision showing that payment for the logs embraced in the contract was conditioned upon the delivery of all of them.    The ruling of the trial court, holding the contract severable, was correct, and the contract was properly enforced against defendant.

In this situation of the case the question arises: Were the vendors of the timber in default under the contract on May 1, 1908, because they had not delivered all of the logs embraced in the contract and had not shipped all the logs that were skidded and left in the woods?    As to the skidded logs left in the woods, the contract required that defendant pay to the vendors the sum of $5 per thousand feet on the 15th of each month for all logs skidded the prior month.    This the defendant failed to do by May 1, 1908.    The defendant evidently refused this payment for the reason that its officers considered the other party in default in not delivering all of the logs embraced in the contract by the 1st of May.    The provisions of the contract, however, do not require delivery of all of the logs by May 1, 1908; it only specified that all logs logged in the season of 1907–8 should be so delivered.    From these conditions of the sale it follows that the vendors had a reasonable time after May 1, 1908, to complete the delivery of the logs not theretofore logged.    From the facts shown, therefore, it appears that the vendors had not breached the agreement

prior to the 1st of May, 1908, as claimed by the defendant, and that they had reasonable time to perform thereafter.

It is well established that the defendant was in default from and after May 1, 1908, in two particulars: First, by its failure to pay the $5 per thousand on the 15th of each month for all logs skidded during the prior month; and, secondly, by its refusal to pay the balance due on the logs actually delivered on or before May 1, 1908. These breaches by the defendant gave the vendors the right to consider the contract terminated and to dispose of the undelivered logs and uncut timber in some other way. We think the record clearly sustains the claim that defendant was in default throughout the negotiations up to the month of September; that the vendors were then freed from their obligation; and that the defendant was in no position to claim damages from plaintiff's assignors. All the alleged detailed errors appertaining to the trial of this issue regarding such damages become immaterial and need not be considered.

The appellant contends that the court erred in submitting question No. 2 of the special verdict, embracing the inquiry as to whether the parties settled any damages defendant claimed to have suffered for alleged breaches of the contract during the first season. The facts and circumstances shown by the evidence on this subject showed a conflict between the parties, and warranted the jury in inferring that a complete settlement had been made by them.

We discover no reversible error in the record, and the judgment should be sustained.

*By the Court.*—Judgment affirmed.

VINJE, J., took no part.

A motion for a rehearing was denied January 10, 1911.