# William Wood

## *v.*

## William Seward *et al.*

1. RESCISSION OF CONTRACT—*of a bill to set aside conveyance.* Where a party conveyed to another a certain parcel of land, under an agreement that a certain portion of such parcel of land should be conveyed by the grantee to a certain railroad company, the remainder to vest in the grantee, upon condition that such grantee should procure the location and construction of a switch or side-track thereon, and such switch or side-track was so procured to be located and constructed by such grantee: *Held,* that the procuring the location and construction of such switch or side-track was a performance on his part as a consideration for the conveyance so made.

2. SAME—*of subsequent conveyance to the railroad company, and herein of the rights of parties.* The grantor having received the benefits for which the grant was given, cannot be permitted to question whether or not there was a subsequent conveyance by his grantee to the railroad company.

3. SAME—*of the effect of deception, when not affecting the rights of parties.* Where the grantor received from his grantee personal security as a pledge of performance, and performance was made, such grantee had a right to a return of his

securities as a pledge of such performance, and although he resorted to artifice to obtain them, it will not justify the taking away of his title, honestly acquired, as punishment therefor.

APPEAL from the Circuit Court of Montgomery county; the Hon. EDWARD Y. RICE, Judge, presiding.

The facts are fully stated in the opinion.

Mr. H. M. VANDEVEER, for the appellant.

Messrs. PALMER & HAY, for the appellees.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

The facts in this case, briefly stated, are, that William Seward, being the owner of the land on which the St. Louis & Terre Haute Railroad was located at the town of Butler, had reserved a strip two hundred feet wide on the north line of the railroad, and a strip one hundred feet wide on the south side, each strip being twelve hundred feet in length. By mistake of the surveyor, this strip was noted on the plat as "Railroad Street," when, in fact, it was intended for a switch. In April, 1856, appellant, representing himself to Seward to be in correspondence with the superintendent of this railroad, and that they wanted these strips of land for a switch or side track, induced Seward to convey the land to him, with the understanding that Wood was to have one hundred feet off the east end, and the railroad company the balance of the strips. Seward, it appears, not fully relying on these representations of Wood, required Wood to deposit with him three certain promissory notes, of six hundred dollars each, as security that the side track should be made, and that he would convey to the company.

The testimony most clearly shows that the side track was made; Wood doing the grading and furnishing the ties,

which two items were of the value of three hundred and twenty-six dollars fifty cents. The strip of land conveyed, contained about eight acres, and averaging the values per acre as given by the four witnesses on that point, we find it to be forty-five dollars per acre—in all, three hundred and sixty dollars.

After the switch was finished and in use, Wood demanded those notes of Seward, which he refused to surrender, unless Wood would surrender the deed. Wood resorted to some artifice to get the notes out of Seward's hands, by saying the deed was of no value—that he had destroyed it, or something to that effect, and succeeded in getting the notes.

It is very clear Seward had no right to retain these securities after Wood, who deposited them, had fully complied with his contract. He had procured the switch to be made, by an outlay of his own money and labor, with assistance furnished by the railroad company, by which appellee's land was augmented in value many thousand dollars, but whether or not, Wood performed his contract, and was entitled to a return of his securities.

It is clear the consideration of the deed sought to be canceled was the making of the switch, and it was made by Wood, and Seward repeatedly declared he did not care who got the land if the switch was made, and said to several persons that this strip should belong to Wood—that he ought to have it.

Under these circumstances, with what propriety can Seward claim to have the deed delivered up and canceled? He has got all he contracted for, and through and by the labor, means and influence of Wood. If Wood has not conveyed to the company their proportion of the land, that is no concern of Seward. If they do not choose to demand a conveyance of Wood, that fact can confer no right upon Seward to a cancellation of the deed.

Nor does the false statement by which Wood recovered his securities, justify a decree divesting him of title to land which

he honestly acquired. The moment the switch was laid, that moment Wood had a right to have his securities returned to him. However wrong, morally, it may have been to make the false statement in order to get them back, we know of no rule of law or equity justifying taking away his title honestly acquired, as punishment therefor.

We are of opinion there is no equity in the bill, and the demurrer should have been sustained to it.

The decree is not warranted by the facts or the law, and must be reversed and the cause remanded.

*Decree reversed.*