# ELI TUTTLE *et al.*

## *v.*

## WILLIAM · ROBINSON.

1. REPLEVIN—*when demand necessary.* Where property, in the possession of the agent of the owner, is levied on by an officer under an execution against a third party, and then turned over by the officer to such agent, to hold as his custodian, it is not necessary for the owner to make a demand before bringing replevin against such officer and custodian.

2. Where an officer levies an execution on property in the possession of the defendant in the execution, as his property, he only discharges his duty, and his possession is lawful, and if another party claims the goods, he must make a demand before he can maintain replevin for them; but if the goods are in the possession of the party so claiming them when levied on, then no demand is necessary.

3. PERSONAL PROPERTY—*transfer of, valid as between the parties, without change of possession.* Where personal property is turned over by a debtor to his creditor, to secure his indebtedness, the arrangement is binding between the parties, although not followed by such a change of possession as would be binding upon other creditors of such debtor.

4. Where the owner of personal property turned the same over to a creditor to secure an honest debt, and the possession was delivered to the creditor, and afterwards the attorney of such debtor, under a power of attorney, which only authorized the sale of real estate, sold such property to the creditor in discharge of the debt, it was *held*, that, even if the power of attorney did not authorize such sale, yet, as the debt was not paid in any other way than by such sale, the creditor would still have the claim

on the property under the original arrangement, and could hold the same against creditors or other persons.

6. ERROR *will not always reverse.* Where an instruction is given upon a point that does not properly arise in the case, and it is not calculated to mislead the jury, or to prejudice them against the opposite party, the judgment will not be reversed, even though the instruction may have been improperly given.

APPEAL from the Circuit Court of Peoria county; the Hon. JOSEPH W. COCHRAN, Judge, presiding.

Mr. H. B. HOPKINS, Mr. J. HOUGH, and Mr. N. MATTHEWS, for the appellants.

Messrs. JOHNSON & HEWETT, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of replevin, brought by William Robinson, in the circuit court of Peoria county, against Eli Tuttle and Claiborn Haralson, to recover certain personal property which had been levied upon by Tuttle, a constable, under a writ of attachment issued by a justice of the peace, in favor of Haralson, against one Sydney Ames.

The defendants to the action pleaded property in Ames, and justified the taking under the writ of attachment. Upon this issue a trial was had, which resulted in a verdict in favor of the plaintiff. The court overruled a motion for a new trial and rendered judgment upon the verdict, to reverse which the defendants have brought this appeal.

It is claimed by appellants that no demand for the property was made before the commencement of the action; that the possession of Haralson was lawful, and as to him the judgment is erroneous.

Haralson was occupying a farm that belonged to appellee, under a lease. The property in question was on the farm in the possession of Haralson, under an arrangement between him and appellee. After the levy by the constable, the property was turned over by the officer to Haralson for safe keep-

ing. He then held the possession, not under and for appellee, but under the officer. The acts done by the constable under the writ changed the possession and custody of the property from appellee to himself.

As Haralson, after the levy, held the custody of the property for and under the constable, it necessarily follows that, if the possession of the property taken by the officer was unlawful, Hartman, who stood in the officer's shoes, occupied a like position.

It can not be said, neither is it claimed, that the constable came into the possession of the property lawfully as against Robinson. The writ under which the levy was made was against Ames. Had the constable found the property in the possession of Ames, and levied upon it as his property, under the writ, he would have only discharged a duty imposed upon him by law, and his possession could not have been regarded otherwise than lawful; but when he took the property from the possession of Robinson under a writ against Ames, it is obvious a different rule prevails.

The possession of the property, therefore, having been acquired unlawfully, no demand was required before the action was brought, and it was not necessary to prove a demand to sustain a recovery. *Clark* v. *Lewis,* 35 Ill. 417.

The second position taken by appellants is, that the evidence shows appellee had no title to the property.

It is unnecessary to enter upon an examination of the testimony in regard to the manner in which Robinson acquired the farm which formerly belonged to Ames, or the motives that actuated either party in regard to that transaction, as it has no direct bearing upon the question involved.

It is clear, from the evidence, that, in the spring of 1869, Ames was indebted to Robinson in the sum of $700, and, in order to secure the payment of this indebtedness, he turned over to Robinson the property in controversy, together with other property, all of which was then upon a farm the title to which was in Robinson, but which had formerly belonged to

Ames, the latter, at the time, being in the possession of the farm by the consent of Robinson.

At the time of this transaction, it does not appear, from the evidence, that Ames was involved or indebted to any person except Robinson ; and even if it be true that, at the time this transfer was made, it was not followed by such a change of possession as would be binding upon creditors, yet the transfer was legitimate and binding between the parties themselves.

The property remained upon the farm, under the supervision of Ames, until the spring of 1872, when a large portion of it was sold by Robinson, and he retained the proceeds. The balance of the property remained upon the farm. In the spring of 1872 the farm was leased by Robinson to appellant Haralson, and, in the month of May of that year, Ames, on account of some violation of the law, left the country.

The property in controversy remained upon the farm until it was levied upon under the writ of attachment sued out by Haralson in December, 1873. In the meantime, on the 22d day of April, 1873, it appears, from the evidence, that a settlement was made between Robinson and one Maxson, who was acting under a power of attorney for Ames. In the settlement, a portion of the farm was transferred to Ames, and, as shown by the evidence of both appellee and Maxson, Robinson was to have all the personal property on the farm.

It is, however, said the power of attorney under which Maxson acted did not authorize him to sell personal property, but only to collect all debts due Ames, and sell real estate.

If it be true, that the attorney did not strictly have the power of sale, yet, as the debt for which the property was originally turned over to appellee was not paid in any other manner except by that sale, if the sale was not authorized, appellee would still hold the claim upon the property acquired under the original arrangement entered into between him and Ames.

The vital question in the case, as we understand it, then

is, whether there was a change of the possession of the property, from Ames to Robinson, prior to the time it was attached by appellant.

If Ames transferred the property to Robinson to secure an honest debt, and this was followed by a change of the possession of the property to Robinson, there can be no doubt but Robinson would be entitled to hold the property against creditors or other persons; but if, on the other hand, the property remained in the possession of Ames until it was attached, then it would be subject to the writ.

Whether there was a change of possession, was purely a question of fact for the determination of the jury, and if the record contains evidence upon which the jury could reasonably predicate a verdict, we can not interfere, although we might be inclined to the belief that the weight of the evidence preponderated against the verdict.

While it is true, from 1869 to the spring of 1872, the property was in the charge of Ames, whether he was employed by Robinson, or in what capacity he acted, the record does not disclose. During this time, however, Robinson exercised acts of ownership over the property. It was assessed to him. He made sales of a portion of the property, and received the proceeds. He owned the land upon which it was kept, and in various ways exercised acts of ownership over it.

After Ames left, in the spring of 1872, appellee removed a portion of the property to his own residence, and, if his evidence is to be credited, and we see no reason to discredit his statements, the remaining portion of the property was left with appellant, who was the tenant of appellee under a contract by which appellant was to take care of the property for appellee for the privilege given appellant of using the milk of the cows.

From these facts, the jury could not consistently do otherwise than find that appellee was in the possession of the property.

Appellee was not bound, in order to hold the property, to

take the actual custody of it himself, but he might properly leave it upon land he owned, and employ others to care for and look after it for him.

The last point relied upon by appellants questions the second instruction given for appellee. We do not deem it important to stop to consider whether the law was correctly stated in the instruction, or not. It was upon a point that did not properly arise in the case, and the instruction was not of a character calculated to mislead the jury or to prejudice them against appellant. As the instruction, therefore, could do no harm, even though it may have been improperly given, we can not, on that account, reverse.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*