The Peoria and Pekin Union Railway Company

*v.*

Warren R. Buckley *et al.*

.114 337
76a 474

114 337
104a 1155

*Filed at Ottawa June 13, 1885.*

1. Warehouseman—*delivery to wrong person—liability to the owner.* Where a warehouseman receives grain, he will be liable to the party storing the same if he delivers it to any other person without authority from the owner, unless the latter has done some act or acts to estop him from denying permission to make such delivery.

2. Same—*delivery of grain on a sampler's ticket—whether a protection to the warehouseman.* It is the usual custom on the board of trade in Peoria, when grain has been consigned to a dealer, and the railroad cars in which it was shipped remain upon the track, to cause the grain to be sampled by a person appointed by the board of trade for that purpose, the sampler giving to the consignee a ticket stating the kind and grade of the grain inspected, and the consignee named, with a sample of the grain. It appeared also to have been the custom, when a sale was made on the board, for the seller to mark on the sampler's ticket, the name of the purchaser, and the price, and give the same to the purchaser, with an order, either verbal or written, to deliver the grain sold at such place as the buyer may designate. It was *held,* that a warehouseman, to whom a shipment of grain had been delivered on the order of one who had purchased under the conditions mentioned, was not authorized to deliver the grain to such purchaser merely upon the presentation of the sampler's ticket with the name of the purchaser and the price marked thereon, without any order from the seller. The sampler's ticket was not a warehouse receipt, in the sense that term is used in the statute.

3. Sale for cash—*whether complete before actual payment—payment by check.* Where a contract is made for the sale of grain at a warehouse, for cash, the purchaser will not be entitled to possession before payment of the price; and a check given by him on a bank for the price, which is dishonored, is no payment, and he acquires no title to the grain by giving such worthless check.

Appeal from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Peoria county; the Hon. N. M. Laws, Judge, presiding.

This suit was brought in the circuit court of Peoria county, by Warren R. Buckley and Thomas J. Pursley, composing the

22—114 Ill.

firm of Buckley, Pursley & Co., against the Peoria and Pekin Union Railway Company. The declaration is in the usual form in trover, to which the plea of not guilty was filed. On the trial before the court without the intervention of a jury, the court found the issues for plaintiffs, and assessed their damages at the sum of $473.46. The motion made for a new trial was overruled, and the court rendered judgment on its finding, against the defendant, for the sum found to be due plaintiffs. That judgment was affirmed in the Appellate Court for the Second District, and a majority of the judges of that court having made the necessary certificate to enable it to do so, defendant brings the case to this court on its further appeal.

Messrs. Stevens, Lee & Horton, for the appellant:

The very appropriation of the grain is equivalent to delivery by the vendor, and the assent of the vendee to take the specific chattel and pay the price, is equivalent to his accepting possession. The effect of the contract, therefore, is to vest the property in the bargainee. Benjamin on Sales, sec. 315.

The reason the cash was not demanded was that the quantity had to be ascertained by weighing. Where anything remains to be done to complete the contract, such as ascertaining the quantity, or the delivery of possession, the title does not pass till the contract is thus completed, while the title may pass where the contract is completed, although something may remain to be done under the contract in order to ascertain the amount to be paid by the purchaser. In such case, if the possession is delivered under the contract, and such is the intention of the parties, the title may pass, although the quantity is subsequently to be ascertained. *O'Keefe* v. *Kellogg,* 15 Ill. 347; *Kohl* v. *Lindley,* 39 id. 199; *Foster* v. *Ropes,* 111 Mass. 10.

If goods sold are clearly identified, then, although it may be necessary to number, weigh or measure them, in order to

ascertain what would be the price of the whole at a rate agreed upon between the parties, title will pass.   *Crofoot* v. *Bennett*, 2 Comst. 258; *Groat* v. *Gile*, 51 N. Y. 431; *Bradley* v. *Wheeler*, 44 id. 495.

The elevator company, acting in good faith, had delivered the grain to the purchaser, who had the *indicia* of ownership, and though appellees might have retaken the grain from Patterson, they could not prejudice the rights of appellant. *Railway Co.* v. *Kerr*, 49 Ill. 458; *Young* v. *Bradley*, 68 id. 553; *Railway Co.* v. *Phillips*, 60 id. 190; *Van Duzor* v. *Allen*, 90 id. 499.

Messrs. Puterbaugh & Puterbaugh, for the appellees:

The sale being for cash, the contract was not completed until the money was paid; and an attempted payment by a check, which is dishonored, is no payment, and if it is given for grain sold for cash, and delivered on such check, the grain may at once be reclaimed by the seller.   *Canadian Bank* v. *McCrea*, 106 Ill. 281; *King* v. *Strong*, 35 id. 9; *Matthews* v. *Cowan*, id. 341.

The delivery of the sampler's tickets to Patterson did not complete the sale, or the delivery of the property; nor did they vest the title in him until there was an actual delivery.

Mr. Justice Scott delivered the opinion of the Court:

On the trial of this case defendant submitted numerous propositions to be held as law applicable to the case, most of which were refused, and on that decision of the court the questions of law discussed arise.   In order to determine whether the rulings of the court on the propositions submitted were erroneous or not, it will be necessary to ascertain the principal facts, and in doing so it will be understood that all the facts the evidence tends to establish, were found, by the trial and Appellate courts, in favor of plaintiffs.

It appears that defendant is a warehouseman, and has an elevator on its line of railroad, situated in the city of Peoria, and known as "Elevator A." On the 26th day of October, 1883, plaintiffs, who were grain dealers at Peoria, received car No. 12,977, consigned to them, containing oats, and on the next day they received car No. 2397, also containing oats. It is proven it was the usual custom, and one most generally observed by dealers on the board of trade in Peoria, when grain is consigned to a dealer, and the cars stand on the track, to cause it to be sampled by a person appointed by the board of trade for that purpose. The sampler gives a ticket stating the kind and grade of the grain inspected, and the consignees named, and posts one of these tickets in the car, and gives the other to the consignee with a sample of the grain. That was done in this case. There is evidence tending to show it was the custom among dealers on the board of trade, (as plaintiffs were,) when a sale is made on the board, for the seller to mark on these tickets the name of the person to whom the grain may be sold, and the price at which it is sold, and give the same to the purchaser, with an order, either verbal or written, to deliver the grain sold at such place as the buyer may designate. In this case the grain in controversy was sold by plaintiffs on the board of trade to a fellow member of that board, by the name of Patterson. The inspection tickets were delivered to Patterson at the time plaintiffs sold him the oats. On the tickets plaintiffs wrote the price in figures at which the oats were sold, and marked thereon the letter "A," which indicated the elevator at which Patterson wished to have the oats delivered or sent. The oats were sent to defendant's elevator by directions of plaintiffs, and were there unloaded. As respects these facts there seems to be no disagreement between the parties. The oats were sold to Patterson, and his check taken for the amount to be paid. On presentation to the bank, on the next

morning after it was drawn, the check was not paid, as the drawer had no money in the bank. In the meantime the oats had been shipped away, by the order and on account of Patterson, by defendant, under the directions of Patterson, and the question presented is, whether defendant had any rightful authority to ship the oats on the order of Patterson. Plaintiffs admit they directed the railroad company to deliver the oats at the elevator of defendant, but they deny most positively they ever gave defendant any authority, either verbal or written, to deliver the oats, or any part of them, to Patterson. The only proof made by defendant, as respects any order from plaintiffs to deliver the oats to Patterson, was the presentation of the inspection tickets by Patterson, with the price marked thereon, and the letter "A," which indicated the oats were to be delivered at defendant's elevator for the consignee; but the tickets, although in the hands of Patterson, contain no order to defendant to deliver the oats to him. The tickets were delivered to Patterson, as was the usual custom on the board of trade, as evidence of the price at which the grain was sold to him, and nothing more. It was to be a cash sale, and plaintiffs were under no obligation to direct defendant to deliver the oats to Patterson until the same were paid for. The giving of a check is no actual payment unless it is afterwards paid. In this case the check given by Patterson, as has been seen, was not paid, and on learning that fact, plaintiffs immediately demanded the oats of defendant, and which they did not and could not deliver, for the reason they had before that time shipped the oats on the order of Patterson. It was a controverted question of fact, at the trial, whether defendant had any authority, verbal or written, from plaintiffs, to deliver the oats to Patterson, and as it must have been found against defendant in the lower court, which had the exclusive authority by law to determine such questions, it is not open for investigation in this court. On the hypothesis defendant had no prior authority from plaintiffs to deliver

the grain to Patterson, the law is, it is responsible for it to plaintiffs.

The court, at the instance of defendant, held the law to be, "that if Buckley & Co. clothed Patterson with evidence of the ownership of the grain in controversy, or held him out as the owner of it, or allowed him to appear as the owner of the grain, with full power of disposition, and the elevator company was innocently led into dealing with him on the strength of his apparent ownership or authority, it will be protected in so doing, and Buckley & Co. can not now recover of said elevator company the value of said grain." Evidently the court found the facts did not bring the case within the operation of the principle embodied in this proposition, which states the law quite as favorably for defendant as it could ask to have it expressed. The propositions refused contain little more than the one held to be law, although expressed in somewhat different language. In view of the fact the court must have found defendant had no sufficient authority to deliver the grain it had received as the property of plaintiffs, to Patterson, there was certainly no error in law in refusing to hold as the court was asked to do in the several other propositions submitted. Unless defendant had permission from plaintiffs, expressed in some form, either verbal or written, or implied by their acts, or were estopped by some act or acts done to deny such permission was given, the shipping of the grain by the direction of Patterson, and on his account, was clearly wrongful, and the law would require the warehouseman to account for it to the consignee for whom it received it in the first instance. The slips delivered to plaintiffs were not warehouse receipts, in the sense those terms are used in the statute. No warehouse receipts were issued when the grain was received. As the grain was received for plaintiffs, common prudence would have required defendant to obtain specific directions to that effect from the storers before shipping the grain on the order of Patterson. This it failed or neglected to do, and the loss

must fall upon the warehouseman.    Unless such precautions are observed, it is obvious there would be no safety for the storers of such commodities.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*