## George S. Eldred, Appellee, v. William H. Colvin, Appellant.

### Gen. No. 21,828.

1. ASSUMPSIT, ACTION OF, § 89*—*when evidence sufficient to sustain finding for plaintiff.* In an action to recover for money lent, evidence examined and *held* sufficient to support a finding for plaintiff.

2. PLEDGES, § 44*—*when evidence sufficient to sustain finding for plaintiff in action to recover value of pledge.* In an action to recover the value of certain bonds alleged to have been deposited with defendant as collateral, evidence *held* sufficient to support a finding for plaintiff.

3. PLEDGES, § 12*—*when implied contract exists that pledgee will return collateral.* There is an implied contract that one with

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

whom collateral security has been deposited will return the collateral when the indebtedness for which the collateral is held is paid.

4. PLEDGES, § 44*—*what is liability of pledgee refusing to return collateral upon payment of indebtedness.* The refusal of the holder of collateral security to return the collateral upon the payment of the indebtedness due him is a conversion and a breach of his implied contract to return the collateral, for which the owner of the collateral may maintain an action of assumpsit to recover his damages.

5. ASSUMPSIT, ACTION OF, § 7*—*when lies to recover for breach of contract.* Assumpsit will lie to recover damages for the breach of a contract, whether the contract is express or implied.

6. ACTION, § 43*—*what claims may be joined.* A claim for money lent and a claim for the value of bonds deposited as collateral to secure an indebtedness from plaintiff to defendant, which has been paid by plaintiff, may be joined in one action.

7. APPEAL AND ERROR, § 367*—*when objection that action is premature is too late.* The objection that an action for money lent is prematurely brought cannot first be made on appeal.

8. ACTION, § 68*—*when is not prematurely brought.* In an action to recover for money lent, *held* that the action was not prematurely brought.

9. INTEREST, § 5*—*when properly allowed.* In an action to recover for money lent and for the value of certain bonds deposited with defendant as collateral security, where plaintiff's contention was that defendant expressly agreed to pay interest on the loan, and defendant collected interest on the bonds, it was not error to allow interest for each item in a judgment for plaintiff.

10. JUDGMENT, § 172*—*when not erroneous because in excess of amount claimed.* Where plaintiff claims a certain sum and interest thereon, it is not error to enter judgment for amount in excess of the principal where the excess is made up of interest.

Appeal from the Municipal Court of Chicago; the Hon. JOHN R. NEWCOMER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1915. Affirmed. Opinion filed May 31, 1917.

SCOTT, BANCROFT & STEPHENS, for appellant; JOHN E. MACLEISH, of counsel.

GANN & PEAKS and MILLER, GORHAM & WALES, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

George S. Eldred brought suit against William H. Colvin to recover for money lent, and for the value of certain bonds. There was a verdict and judgment in favor of plaintiff for $10,795.83, to reverse which defendant prosecutes this appeal.

Plaintiff in his statement of claim seeks to recover two items: (1) $4,500 for money lent to the defendant June 20, 1908, and interest thereon; and (2) the par value of five Chicago Railway collateral trust bonds belonging to plaintiff of the par value of $5,000, with interest from April 24, 1913. The evidence disclosed that the defendant is a broker engaged in the business of buying and selling securities in Chicago under the name of William H. Colvin & Company; that plaintiff was a customer for several years prior to the commencement of this suit; that shortly before June 20, 1908, defendant was interested in a gold mine in Nevada, having invested in the mine about $45,000; that one Charles Gates of New York was also interested in the mine; that the defendant offered to the plaintiff one-tenth of his interest in the mine for $4,500.

Plaintiff's contention is that he agreed to pay $4,500 to the defendant for one-tenth of his interest in the mine, provided $75,000, which it was stated Gates had advanced, would be first used in developing the mine; that until this was done he would make a personal loan to the defendant of $4,500, which was to bear interest; that this was agreed to by the defendant, and the latter was authorized to charge plaintiff's account with the sum of $4,500, defendant having at that time more than this amount of money belonging to the plaintiff; that the following month plaintiff received from the defendant a monthly statement which showed a $4,500 loan to the defendant; that subsequently Gates with-

drew his $75,000, or had failed to put it up, and thereupon the defendant stated that he would put up the money himself to develop the mine and afterwards, on several occasions, explained to the plaintiff why the deal was not closed and the stock issued, all of which was satisfactory to plaintiff; that no stock was ever offered by the defendant until plaintiff, shortly before the beginning of this suit, demanded the return of the $4,500 with interest, when defendant then stated plaintiff could have the stock in the mine.

The defendant's version of the matter is that there was nothing said between the parties that the $4,500 advanced was to be a loan, but on the contrary it was an investment in the mine, and that the defendant was unable to deliver the stock on account of delays which he satisfactorily explained to plaintiff.

There was evidence submitted tending to sustain each theory of the case. The jury found in favor of the plaintiff. No complaint is made of the admission or exclusion of evidence, nor of the instructions to the jury, but the defendant contends that the verdict in this regard is manifestly against the weight of the evidence. It would serve no useful purpose to set forth the evidence in detail. The jury saw and heard the witnesses on the stand; their finding in favor of the plaintiff has been approved by the trial court, and, after a careful examination of the record, we are unable to say that such finding is manifestly against the weight of the evidence.

With reference to the five bonds, the evidence shows that plaintiff had for many years been a customer of the defendant, and that as collateral security he had deposited with the defendant five railway bonds of the par value of $5,000; that in November, 1909, plaintiff and defendant and one Keller entered into a verbal agreement whereby the defendant was to "sell short" certain shares of stock for the three,

which he did; that afterwards in February, 1910, the three had a conversation in reference to the matter, plaintiff's version being that the defendant reported that he had made $3,000 profit for the three and suggested that they continue the matter and authorize him to "sell short" such shares of stock as he might deem proper; that plaintiff and Keller agreed to this, provided they would not be held liable for a loss exceeding the amount of the profits which each then had made; that defendant agreed to this, but afterwards about July, 1911, plaintiff and Keller received a statement from the defendant in which each of their accounts was charged with the sum of $3,000; that each of them separately took the matter up with the defendant and inquired the nature of this charge against them; that the defendant stated it was a loss incurred in the transactions which he had conducted for the three; that each of them protested against the charge on the ground that their loss was not to exceed the amount of gains they had made at the time of the conversation in February, 1910; that thereupon defendant stated he would return the $3,000, and plaintiff heard nothing more with reference to this transaction, but continued to deal with the defendant in other matters as he had theretofore done; that on April 18, 1913, plaintiff was closing out his business transactions with the defendant and paid the defendant $4,013.03, the amount due in other matters; that after this payment plaintiff demanded the return of his $4,500, with interest, and the five bonds. The demand was refused on the ground that the $4,500 was an investment, and that plaintiff was still indebted to defendant more than $3,000 on account of the transactions which the defendant conducted for plaintiff, Keller and himself and that the bonds were held by the defendant as security for this indebtedness.

On the other hand, defendant contends that he was

authorized by the plaintiff and Keller to buy and sell stock jointly for the three, each sharing equally in the profits and losses; that he made several purchases and sales of stock and reported each to plaintiff, which transactions were approved by him; that the losses incurred by the three amounted to about $22,000; that he charged $3,000 against each of them, and that there was still a balance due him from the plaintiff of more than $3,000, and therefore he was justified in holding the bonds which had been pledged to him as collateral security.

On this issue evidence was introduced tending to sustain both the plaintiff's and defendant's theories. The issue was therefore clearly a question for the jury. No complaint is made that the jury were not properly instructed. The jury found in favor of the plaintiff, and we see no reason for disturbing their verdict.

The defendant, however, contends that the judgment is erroneous, in that the right of action, if any, for the $4,500 is in assumpsit, and that the right of action concerning the bonds is in tort, and that there is no warrant for joining the two claims in one suit. It is conceded that this action, although brought in the Municipal Court, is in the nature of an action of assumpsit. The defendant argues that as the five bonds were pledged to him and as he still has them in his possession and claims to hold them only as security, assumpsit will not lie to recover the value of them; "that in a bailment case there can be no recovery of the value of the bailment, unless a sale or a conversion to the use of the defendant is shown"; that since there was no express agreement by the defendant to return the bonds, the value of them "upon any theory of the case could only be recovered in *indebitatus* and not in special assumpsit," and that as there was no sale or conversion of the bonds, this action would not lie; but

that if plaintiff has any right to recover by reason of the detention of the bonds, it is in an action of tort. In support of this contention, the cases of *Morrison v. Rogers*, 3 Ill. 317; *Stahl v. Ansley*, 7 Ill. 32; *Ives v. Hartley*, 51 Ill. 520; *Parker v. Tiffany*, 52 Ill. 286; *Landis v. Wolfe*, 106 Ill. App. 533, and others are cited.

In the *Morrison* case, *supra*, it was held that where timber and rails were tortiously taken and the same had not been converted into money or money's worth, and there was no subsequent promise by the defendant to pay for them, plaintiff could not waive the tort and recover the value of the property in an action for money had and received.

The *Stahl* case, *supra*, was an action of *indebitatus assumpsit*, where the plaintiff left with the defendant certain boots and shoes to sell on commission. All but two cases of them were sold and the proceeds thereof paid to the plaintiff. There was no evidence of a sale of the two remaining cases, or a failure to deliver them to plaintiff on request. It was held that plaintiff could not recover. There was no breach of contract involved.

In the *Ives* case, *supra*, it was held that where a person puts grain in a warehouse for the purpose of storage and the warehouseman converts the same to his own use by manufacturing it into flour and selling the flour, the owner may waive the tort and recover in assumpsit in an action for money had and received, the value of the grain.

In the *Parker* case *supra*, appellee stored some furniture in appellant's building. Appellant sold some of the furniture without authority from appellee. Afterwards appellant went out of business and acknowledged that he owed appellee for the furniture so sold and promised to pay him. Payment not having been made, suit was brought in assumpsit, and it was held the action would lie.

In the *Landis* case, *supra,* the court said, p. 537: "If appellee's contention should be admitted to be that he was the owner of the goods, and appellant had wrongfully taken them and converted them so as to raise a trover liability, still, under the law of this State he is not entitled to recover in this action of assumpsit." The court there held that there was no contract relation between the parties, and therefore assumpsit would not lie.

In none of the foregoing cases where it was held assumpsit would not lie was there a contract relation between the parties, and they are therefore not applicable to the facts in the case at bar as there was an implied contract that the defendant would return the bonds when the indebtedness for which they were held by him was paid.

Furthermore, the jury having found that the defendant was paid the amount due him for which he held the bonds, and he having refused to deliver them to the plaintiff, this constitutes a conversion of the bonds. In Schouler on Bailments (2nd Ed.), the author says, sec. 253: "A tender of whatever is due on the appointed day, or any other rightful tender, will put an end to the pledge relation, and render the pledgee's longer detention of the thing inexcusable, and his refusal or unreasonable delay to give it up on demand tantamount to a conversion." Substantially the same is said in Jones on Collateral Securities and Pledges (3rd Ed.), sec. 566: "A conversion of the pledge occurs immediately upon the creditor's refusal of a proper tender of the debt upon the day of its maturity or afterward." In Story on Bailments (9th Ed.) it is said, sec. 122: "If the depositary (pledgee) improperly refuses to redeliver the deposit, when it is demanded, * * * the nondelivery after such demand is a tortious conversion." We are therefore clearly of the opinion that the refusal of the de-

fendant to deliver up the bonds upon payment of the amount due him was a conversion and a breach of his implied contract to return them, for which plaintiff may maintain an action of assumpsit to recover his damages.

It is conceded, as of course it must be, that an action of assumpsit will lie to recover damages for the breach of a contract. And this form of action may be maintained whether the contract is express or implied. 1 Chitty's Pleading (7th London Ed.) *99. The right to maintain such an action has been upheld in the cases of *O'Reer v. Strong,* 13 Ill. 688; *Cushman v. Hayes,* 46 Ill. 145; *Leonard v. Dunton,* 51 Ill. 482; *Reebie v. Brackett,* 109 Ill. App. 631.

The defendant next contends that as to the $4,500 item, the suit was prematurely brought; that if this item was a loan payable within a reasonable time, a reasonable time had not elapsed prior to the institution of the suit. No such defense was made in the trial court, and obviously it cannot be made here. Furthermore, we think that a reasonable time had elapsed before suit was brought.

Complaint is also made that interest was improperly allowed on each item. Plaintiff's contention was that when the $4,500 was loaned to the defendant the latter expressly agreed to pay interest; and as the defendant collected interest on the bonds, manifestly it was not error to include interest on both items in the judgment.

The defendant next contends that the judgment is erroneous, in that the amount of damages mentioned in the *præcipe* and summons was $9,500, while the judgment is for $10,795.83, and that as there was no amendment to the *præcipe* and summons, no judgment could properly be entered in excess of $9,500. Plaintiff in his statement of claim claims $9,500, and interest thereon, and as it appears that the excess of $9,500

is made up of interest, we think there was no error in entering the judgment.

The judgment of the Municipal Court of Chicago is affirmed.

*Affirmed.*