## Minnie C. Deane, Administratrix of the Estate of John M. Deane, Deceased, Appellee, v. Fort Dearborn Trust & Savings Bank and Fred M. Blount, Appellants.

### Gen. No. 7,661.

1.  PLEDGES—*refusal of pledgee of bonds as collateral security for note to return bonds upon payment of note as conversion.* Where bonds were held as collateral security for the payment of a note, there was an implied agreement to return the bonds upon payment of the note, and the refusal of the pledgee to return them, upon demand, when the note was paid, constituted a conversion of such bonds, notwithstanding the same were held in consequence of a claim by a third party that the bonds were his property and not the property of the pledgor.

2.  ESCROWS—*delivery by depositary in violation of terms of deposit agreement as conversion, entitling injured party to maintain trover or replevin.* Where following the refusal of the holder of bonds deposited by the maker of a note with the payee thereof as collateral security for the payment of such note, to deliver the said bonds to the maker's administratrix when she paid said note, the parties entered into an agreement to the effect that the pledgee of the bonds was to retain them until determination by agreement or by a court of competent jurisdiction of a controversy as to the ownership of such bonds as between the pledgor's administratrix and a third party, and payment of the pledgee's expenses in the transaction, the act of the pledgee in thereafter delivering the bonds to such third party claimant, in violation of such agreement, constituted a conversion thereof, entitling the administratrix to maintain replevin to recover the bonds, or trover to recover their value.

3.  PLEDGES—*termination of pledgee's assignable interest in bonds deposited as collateral security for note by payment of note.* A pledgee of bonds as collateral security for a note has no assignable special interest therein after payment of the note, although it continues to hold such bonds, under the terms of a special agreement between it and the pledgor, until determination of a controversy as to the title to such bonds as between the pledgor and a third party.

4.  CONVERSION—*when demand and refusal not conditions precedent to maintenance of trover or replevin to recover subject of escrow delivered to claimant thereof by depositary in violation of escrow agreement.* Where one holding bonds pursuant to an agree-

ment that he shall so hold them pending settlement of a controversy between parties claiming to own them, delivers such bonds to one of such parties in violation of the agreement, both such holder and the party receiving the bonds are guilty of a conversion of the bonds entitling the other claimant to maintain replevin or trover against such receiver of the bonds, without precedent demand and refusal.

Appeal by defendants from the Circuit Court of Du Page county; the Hon. WILLIAM J. FULTON, Judge, presiding. Heard in this court at the April term, 1926. Affirmed. Opinion filed July 28, 1926.

MONTGOMERY, HART & SMITH, for appellants; LOUIS E. HART and VICTOR C. MILLIKEN, of counsel.

CHARLES W. HADLEY, for appellee; HARRY G. WEAVER, of counsel.

MR. JUSTICE JETT delivered the opinion of the court.

This is a suit instituted by Minnie C. Deane, administratrix of the estate of John M. Deane, deceased, against Fort Dearborn Trust and Savings Bank, a corporation, and Fred M. Blount and John E. Shea, appellants, to recover the possession of two bonds of the Ogden Gas Company, of the par value of one thousand dollars ($1,000) each, or the value of the same.

The declaration contains three counts in replevin and one in trover. Pleas were filed by the Fort Dearborn Trust and Savings Bank and John E. Shea to the replevin counts in which it was alleged that the title to the said bonds was in Fred M. Blount, and a plea of the general issue to the trover count. Appellant Fred M. Blount pleaded to the counts in replevin alleging that the bonds in question were his property and he also filed the general issue to the count in trover. Subsequently, by leave of the court, appellants filed additional pleas to the effect that appellee was not entitled to the possession of the bonds in question at the time the suit was commenced, because of an agreement entered into between appellee

and the Fort Dearborn Trust and Savings Bank, one of the appellants, in which it was agreed that the said Fort Dearborn Trust and Savings Bank should retain the bonds in question until their ownership had been determined, by either a court of competent jurisdiction or by agreement and until the bank should have been paid the expenses it had incurred. The defendant Shea was dismissed out of the case. The cause was tried by the court, without the intervention of a jury, and a judgment was rendered in favor of the plaintiff, appellee, herein, and against the defendants, Fort Dearborn Trust and Savings Bank, a corporation, and Fred M. Blount, appellants herein, for one thousand nine hundred sixteen and 72/100 dollars ($1,916.72) and costs of suit, from which judgment on appeal has been perfected to this court. Another branch of this cause was before this court at a former term, and is reported in 232 Ill. App. 109.

It appears that on November 8, 1920, John M. Deane died intestate at Wheaton, Illinois, and appellee, Minnie C. Deane, was appointed administratrix of his estate by the county court of Du Page county and that she duly qualified. At the time of his death, Deane was indebted to the appellant, the Fort Dearborn Trust and Savings Bank of Chicago, upon a promissory note for $8,000 collaterally secured by various bonds, aggregating $12,500 and including two first mortgage bonds of the Ogden Gas Company, each of the par value of $1,000. Shortly after the death of Deane, Fred M. Blount, a brother-in-law of Deane, notified the bank that the Ogden Gas bonds were his property and did not belong to Deane. The note became due May 2, 1921, and on May 11, 1921, was paid by Mrs. Deane. The bank did not, at that time, turn over to her any of the collateral held by it as security for the note. She made repeated demands for its delivery. The bank asked her to sign a written statement to the effect that notice had been served

on the bank by Blount that he was the owner of a part of the collateral, that the bank was authorized to hold the collateral for whosoever might be entitled to receive it, and that the bank should not be liable for so doing and should have the first lien on the collateral for its expenses. Appellee refused to sign the document. The record discloses that on the 2nd day of February, 1922, an agreement was entered into between the Fort Dearborn Trust and Savings Bank and the appellee herein, which recited the making of the note for the said sum of $8,000 and the depositing of the collateral, including the property involved in this controversy, all of which was then in the possession of the bank. The agreement also recited the death of the said John M. Deane and the appointment of Minne C. Deane as administratrix of his estate, and that the appellant Fred M. Blount claimed to own the bonds in question, and that the dispute between Blount and the appellee had caused expenses to the bank; that the appellee wished said bank to deliver to her the securities put up as collateral, other than those claimed to be owned by Blount and the $500 Northwestern Gas, Light and Coke Company bond, and all of the collateral should be delivered to the appellee, except the bonds in question and the $500 Northwestern Gas, Light and Coke Company bond, and that the said bonds in question and the said $500 Northwestern Gas, Light and Coke Company bond might be held until the ownership of the bonds in question had been determined either by agreement between the appellee and Blount or by the judgment of a court of competent jurisdiction, and until the said appellee, or the said Blount, had paid to the bank the amount of its reasonable expenses.

On February 22, 1922, the bank turned over to appellee all of the collateral except the two bonds involved in this proceeding and the $500 bond last abovementioned. After the contract of February 2, 1922,

was entered into, the bank, in violation of the terms thereof, on, to wit, July 7, 1922, turned the two Ogden Gas bonds of $1,000 each over to Blount and this suit followed with the result as above indicated. The two Ogden Gas bonds of the par value of $1,000 each are the ones that are involved in this proceeding, the bond of the Northwestern Gas, Light and Coke Company of the par value of $500 having been delivered to appellee.

As reasons for a reversal of the judgment, it is urged that there could have been no conversion by Blount until after July 7, 1922, the date of obtaining the bonds; that trover is a possessory action, and before appellee can recover she must show tortious conversion, a right in her and a right to the immediate possession; that pledgee has a right to deliver the goods to a third party without consideration, may sell or assign his interest absolutely or may assign it conditionally without destroying the original lien; that where the defendant obtains the goods rightfully, he will not be held guilty of a conversion without demand having been made upon him before suit is brought.

We are unable to agree with the reasons assigned by appellants for a reversal of the judgment. There is no evidence in the record of the ownership of said bonds in any person other than John M. Deane or his said estate. The possession by Deane, of the bonds in question, at the time the same were deposited by him with the Fort Dearborn Trust and Savings Bank, was prima facie evidence of ownership. *Martin v. Martin,* 174 Ill. 371-378; *Coffey v. Coffey,* 179 Ill. 283-293; *Wellman v. Highland,* 87 Ill. App. 405-407.

There is no evidence in the record overcoming the presumption that Deane was the owner of the bonds in question at the time of depositing them with the Fort Dearborn Trust and Savings Bank as security for his note. The pledge was solely for the purpose of securing the payment of the note of the said John M.

Deane. The bank had the right to hold said bonds and to continue to hold them until the note was paid. The pledge was made on the implied agreement that when the note was paid the bonds would be returned to the pledgor. No authority was given the bank to do anything other than return the bonds to the pledgor, his representatives or assigns, upon the payment of the note. No authority under the pledge was vested in the bank to decide to whom the property belonged. It had no power or authority to determine whether the appellee or the appellant, Blount, was the owner of the bonds. It was under no obligation to the appellant, Blount, and his notice to them created no liability, so far as the bank was concerned. The refusal of the bank to deliver said bonds to appellee after payment of the note, and demand had been made for such bonds, was a conversion of the bonds. In *Elder v. Colvin,* 206 Ill. App. 2, the court held that there is an implied contract that one with whom collateral security has been deposited will return the collateral when the indebtedness for which the collateral is held is paid, and the court in its opinion, among other things, at page 9 said: "Furthermore, the jury having found that the defendant was paid the amount due him for which he held the bonds, and he having refused to deliver them to the plaintiff, this constitutes a conversion of the bonds. In Schouler on Bailments (2nd Ed.), the author says, sec. 253: 'A tender of whatever is due on the appointed day, or any other rightful tender, will put an end to the pledge relation, and render the pledgee's longer detention of the thing inexcusable, and his refusal or unreasonable delay to give it up on demand tantamount to a conversion.' Substantially, the same is said in Jones on Collateral Securities and Pledges (3rd Ed.), sec. 566: 'A conversion of the pledge occurs immediately upon the creditor's refusal of a proper tender of the debt upon the day of its maturity or afterward.' In Story

on Bailments (9th Ed.), it is said, sec. 122: 'If the depositary (pledgee) improperly refuses to redeliver the deposit, when it is demanded  *   *   * , the non-delivery after such demand is a tortious conversion.' We are therefore clearly of the opinion that the refusal of the defendant to deliver up the bonds upon payment of the amount due him was a conversion and a breach of his implied contract to return them, for which plaintiff may maintain an action of assumpsit to recover his damages." To the same effect, is *Schwartz v. Chicago State Pawners Society*, 195 Ill. App. 93-97.

In 31 Cyc. p. 855, ¶¶ 2 and 3, the following rule is announced:

"Duty of Pledgee to Return. Accordingly, whenever the obligation which the pledge was given to secure is discharged, it becomes the duty of the pledgee to return the property or its proceeds, if any, to the pledgee.

"Conversion by Failure to Return. The failure of the pledgee to return the collateral upon payment of the principal debt is itself a conversion, for which an action may be maintained by the pledgor or his assignee."

Therefore, the refusal of the bank to deliver the securities in question to the appellee, upon demand after payment of the note, constituted a conversion of said bonds and thereafter the possession of the bank was unlawful, at least up to the time of the making of the agreement of February 2, 1922, with the appellee. The agreement of February 2, 1922, it will be remembered, recites that John M. Deane was indebted to the bank, and to secure the same had deposited the securities indorsed on the back of the note; that all of the securities were in the possession of the bank; that Blount claimed to own the bonds in question; that appellee wished said bank to deliver the said securities to her and that the dispute between appellee

and Blount had caused expense to the said bank, and that the bonds in question and the $500 Northwestern Gas, Light and Coke Company bond was to be held by the bank until the ownership of the bonds in question was determined either by agreement between appellee and Blount or by the judgment of a court of competent jurisdiction, and until either the appellee or Blount paid to the bank "its reasonable expenses above-mentioned." The reasonable expenses mentioned in the said contract could mean no expense other than such as were incurred by the bank by reason of its violation of the pledge and its unlawful conversion of the property belonging to appellee.

Notwithstanding the contract of February 2, 1922, the bank on July 7, 1922, and in violation of the terms of the agreement, delivered the bonds in question to Blount and, some time later, delivered to appellee the remaining $500 Northwestern Gas, Light and Coke Company bond. The agreement between the bank and appellee entered into on the 2nd of February, 1922, gave to the bank no right to determine the ownership of the bonds in question. If the agreement was of any force or effect, it placed the bonds with the bank for the purpose of safely holding them until the question of ownership could be determined, and then to deliver the bonds to the person that was determined to be the owner. That was the only thing the bank, under its agreement, had any right to do and when it delivered the bonds to Blount, it violated the terms of the agreement and repudiated the same. The bank, after the delivery of the bonds to Blount, no longer held them under the terms of the agreement. By the act of delivering the bonds to Blount, the bank placed the bonds beyond its control, and no longer could it hold the bonds as the agreement provided. The bank, by its act, determined the ownership of the bonds and decided that Blount owned them, and delivered them to him. This was a conversion of the

bonds and the appellee could then institute replevin to recover the bonds or trover to recover the value thereof.

In *Knight v. Seney*, 290 Ill. 11, at page 15, the court said:

"Trover will lie for the wrongful conversion of bills of exchange, promissory notes, bonds or other securities for the payment of money. Any unauthorized act by which an owner is deprived of his property permanently or indefinitely, or the exercise of dominion over property inconsistent with the rights of the owner, is a conversion. The securities were delivered to the plaintiffs in error as bailees, to be sold or otherwise dealt with as the bailor might direct, or to be returned to him within the time mentioned in the receipts. *They were not returned but were otherwise disposed of. This disposition, if unauthorized by the defendant in error, was a wrongful conversion.*"

In *Brink's Chicago City Express v. Hendricks*, 104 Ill. App. 154, at page 155, the court said: "It appears that the record shows appellant had admitted it received the goods for storage, retained them in its custody for a considerable time, collected storage charges therefor, negligently delivered them without orders and by mistake at the wrong place, where they were finally sold as unclaimed property to pay charges, and were thus wholly lost. *An action of trover lies against a warehouseman who by mistake, delivers goods to a wrong person, and he will be responsible for the loss as upon a wrongful conversion. Indianapolis & St. L. R. Co. v. Herndon & Vanduzen*, 81 Ill. 143-146; *Peoria & P. U. Ry. Co. v. Buckley*, 114 Ill. 337; *Diamond Joe Line v. Carter*, 76 Ill. App. 470.*"

In *Parkyn v. Turley*, 206 Ill. App. 78, certain collateral was deposited to secure the payment of a note. Shortly after it was deposited the holder of the note sold the collateral, but not pursuant to the terms of the note and not because the property had depreciated,

and when a renewal note was executed, the note recited the same collateral deposited as though it was still on hand, and the court held that the selling of this collateral was in violation of the agreement under which it was deposited and constituted a conversion and held that trover would lie.

It is insisted by appellants that the Fort Dearborn Trust and Savings Bank had a special interest in the bonds, which it, as pledgee, could sell and assign, and, in support of their contention, have cited a number of authorities. There is no doubt about the rule that a pledgee has such a special interest in the pledged property that he can sell and assign his interest therein along with the original indebtedness. The cases relied upon by appellants, in support of their contention of a special interest in the bonds, have no application here. The bank, before the note was paid, had a special interest in the collateral and could have sold and assigned its interest in the note and the pledged property, and the purchaser would have thereby obtained all of the right, title and interest that the bank had in and to the securities, but when appellee paid the note, that special interest in the pledged property was terminated and the bank had thereafter no interest whatever that it could assign. *Eldred v. Colvin,* 206 Ill. App. 2; *Wood v. Seward,* 46 Ill. 457; *Schwartz v. Kaufman,* 159 Ill. App. 503.

Under the agreement of February 2, 1922, the securities were not pledged to the bank, but the bank was merely holding them until the question of ownership should be decided. This idea of having a special interest in the bonds in question seems to be an afterthought on the part of appellants. There is no evidence in the record tending to show that the bank was endeavoring to assign any interest to Blount that it might have had in the property. It has been heretofore the contention of appellants that Blount was the owner of the bonds in question. Appellants took this

position in their several pleas. Blount took the witness stand and appellants offered to prove by him that he was the owner of the bonds. He, however, was not a competent witness. The testimony of the witnesses, Benjamin, Potter and Howe are to the effect that the bank refused to turn over the bonds because Blount was claiming to be the owner of them. Shea, the vice president of the bank, testified to the same thing. Shea and Howe both testified of demands made by Howe, when Howe was representing appellee, for the bonds before and after the bonds were turned over to Blount, and in each instance, the bank insisted that it could not turn the bonds over because Blount owned or claimed to own them.

Furthermore, there is no evidence of any sale or assignment of the bonds by the bank to Blount. The burden was upon the appellants to establish such fact, if such was the fact.

It is next urged by appellants that Blount obtained the property rightfully and that he cannot be held to be guilty of a conversion without a demand for the bonds and a refusal by him to surrender them. The bank, as we have already seen, was, in delivering the bonds to Blount on July 7, 1922, in violation of its agreement with appellee, guilty of conversion. Blount, in receiving the bonds from the bank, which it had no right to part with or dispose of and to which they had been intrusted for another and specific purpose, was also guilty of conversion. The act of the bank in delivering the bonds to Blount, in violation of the agreement of February 2, 1922, rescinded the agreement and gave to appellee the immediate right of possession.

In *Genesee Fruit Co. v. Barrett,* 67 Ill. App. 673, the court, at page 677, said:

"This court has, in *Geary v. Bangs,* 37 Ill. App. 301, laid down the rule to be as follows:

" 'The true ground is that a refusal to pay in accordance with the terms of the agreement is a breach which indicates that the one who is guilty of it does not intend to be bound by the contract, and therefore the other party may rescind it.' See, also, *The Hess Co. v. Dawson,* 149 Ill. 138.

"In *Withers v. Reynolds,* 2 Barn. & Adol. 882, it was held that under a contract to deliver three loads of straw at thirty-three shillings a load, to be paid as the loads were delivered, the refusal by Withers to pay for one load, for which he was behind, indicated that he did not intend to be bound by the contract and justified Reynolds in refusing to make a further delivery."

38 Cyc. 2024 says:

"It is well established by numerous authorities that it constitutes a conversion to receive property from one who has no right to part with or dispose of it, and thereafter to use, sell, or exercise dominion over it, whether with knowledge of the owner's rights with respect to such property or in good faith without any notice whatever of the rights of the owner."

38 Cyc. 2025 says:

"Liability for conversion attaches to whomsoever receives and converts to his own use, or otherwise disposes of, property which was delivered to him by one to whom the property had been intrusted by the owner for another and specific purpose."

In *Schwamb Lumber Co. v. Schaar,* 94 Ill. App. 544, the court at page 546 said:

"The evidence in the case tends strongly to show that the appellees came into possession of the lumber in question wrongfully; that they purchased the lumber in question, with other property, from one Andrew J. Olson, in consideration of the cancellation by appellees of certain indebtedness from Olson to them, and other considerations; that, Olson, at the time, had no title whatever to the lumber, it having been de-

livered to him by the plaintiff to be dried in his kiln. This being true, appellees took no title by their purchase from Olson, and their possession of the lumber was wrongful and tortious as to plaintiff. In order to sustain replevin when the possession of the defendant is wrongful, a previous demand of possession is unnecessary. *Clark v. Lewis,* 35 Ill. 418-23; *Stock Yards Co. v. Mallory,* 157 Ill. 563; Fifth Am. & Eng. Ency. Law, 528 I (1st Ed.); *Galvin v. Bacon,* 11 Me. 28 (2 Fairfield Rep.); Wells on Repl., sec. 365; *Butters v. Haughwout,* 42 Ill. 18-24; *Bruner v. Dyball,* 42 Ill. 36; *Hardy v. Keeler,* 56 Ill. 152; *Tuttle v. Robinson,* 78 Ill. 332-4; *Oswald v. Hutchinson,* 26 Ill. App. 273; *Trudo v. Anderson,* 10 Mich. 357-67; *Rosum v. Hodges,* 9 L. R. A. (S. Dak.), 817-9."

In *Taylor v. Welsh,* 138 Ill. App. 190, the court at page 194 said:

" 'Where one's property has been disposed of by the one having it in charge, without authority, the owner may bring replevin for it without a previous demand.' Coffey on Replevin, sec. 512, citing *Trudo v. Anderson,* 10 Mich. 357, and *Ballou v. O'Brien,* 20 ib. 304, which cases fully support the text" and citing the following from *Clark v. Lewis,* 35 Ill. 420: " 'Plaintiff in error having acquired no title to the property by his purchase, his possession was wrongful. Being wrongfully in possession, a demand was unnecessary.' The case is cited with approval and the same rule announced in *Tuttle v. Robinson,* 78 Ill. 334. It was also so held in *Oswald v. Hutchinson,* 26 Ill. App. 273; *Hartman v. Loptien,* 93 ib. 472, and *Schwamb Lumber Co. v. Schaar,* 94 ib. 544."

We are therefore of the opinion that under the facts and circumstances as disclosed in this proceeding, no demand was necessary in order for the appellee to maintain the suit. Moreover, a demand for the bonds from Blount would have been unavailing. From what has already been shown, both of the appellants were

contending that Blount owned or had an interest in the bonds. The persistency of their contention was to the extent that the bank violated its agreement with appellee to deliver the bonds to Blount. In *Kee & Chapell Dairy Co. v. Pennsylvania Co.*, 291 Ill. 248, in which the court was discussing the question of a demand being unavailing, at page 255 said: "Even though this be considered not sufficient as a demand, it is sufficient to show that a demand would have been unavailing and therefore unnecessary, as the effect of appellant's statement was that it did not surrender the property without a writ being issued. While demand is usually necessary where the defendant comes into possession of the goods rightfully, yet where the circumstances show that demand would be unavailing such demand is not necessary. *Cranz v. Kroger*, 22 Ill. 74; *Johnson v. Howe*, 2 Gilm. 342."

The evidence fails to disclose any right on the part of Blount to the possession of the bonds. The evidence establishes the fact that said bonds are assets of the estate of John M. Deane, deceased. We concluded therefore that the trial court did not commit error in the trial of this cause, and that the judgment of the circuit court of Du Page county should be affirmed, which is accordingly done.

*Judgment affirmed.*