## Genesee Fruit Company v. William H. Barrett and Charles R. Barrett, Copartners as Barrett & Barrett.

1. RESCISSION—*For Failure to Pay.*—A refusal to pay in accordance with the terms of an agreement, even though the amount withheld be small, is a breach which indicates that the one who is guilty of it, does not intend to be bound by the contract, and gives the other party a right to rescind it.

Assumpsit, for breach of contract. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the October term, 1896. Reversed and remanded. Opinion filed January 7, 1897.

VICTOR ELTING, attorney for appellant; J. S. HARLAN, of counsel.

HOLLETT & TINSMAN, attorneys for appellees.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This appeal is from a judgment of $1,684.95, recovered by the appellees in a suit brought against the appellant for a breach of contract.

The appellant corporation is engaged in the manufacture and sale of cider and vinegar, with mills in the States of New York and Michigan, and the appellees are jobbers in such products, in Chicago.

Appellant's treasurer called at the place of business of appellees in Chicago in December, 1891, and, after some preliminaries, executed to appellees the following memorandum of an agreement to sell them forty car loads of cider and vinegar:

" December 21, 1891.

We to-day sold Barrett & B. 15 cars juice $6\frac{1}{4}$; 20 cars vinegar $6\frac{1}{2}$, 4 per cent; 5 cars hard cider $6\frac{1}{4}$, in their packages F. O. B. Lansing, to be taken as wanted previous to September 1, 1892, and it is understood that we shall not be

responsible for fermentation of juice if not ordered out before April 1, 1892.

GENESEE FRUIT CO.,

JOHN C. MOTT, Treasurer."

" Juice " is the trade name for sweet cider, and " packages " is the trade name for barrels, etc. The figures " $6\frac{1}{4}$ " and " $6\frac{1}{2}$," mean that many cents per gallon; " 4 per cent" indicates the strength of the vinegar, and " Lansing," in Michigan, is the place at which the deliveries free on board cars were to be made; and a car, or car load, is understood by the trade as meaning sixty barrels of an average of forty-seven gallons each, or about 2,800 gallons.

The fifteen car loads of juice were delivered by April 5, 1892, and were paid for, except the sum of $7.94, which appellee deducted because of leakage or fermentation in the last car load delivered on April 5, 1892.

None of the vinegar or hard cider, except one car load of the latter, in March, 1892, was ever delivered. Concerning that one car load, the appellees claimed it was not equal in quality to what it should have been, and refused to accept it under the contract. They then obtained authority from appellant to sell it for its account at an authorized price, and afterward falsely pretended, by an account rendered, that they had so sold it, although in fact they did not sell it, but kept it themselves.

After the shipments spoken of, ending April 5th, no more of the contracted goods were ordered by the appellees until on August 25, 1892, when they sent a telegram to appellant as follows: " Ship hard cider and vinegar bought as per contract."

That telegram had been preceded by one from appellant to appellees on August 13th, requesting them to remit the balance of $7.94 due on the juice shipped April 5th, and asking for instructions about shipping the remaining twenty-five car loads of vinegar and hard cider, and refusing to give attention to other orders by appellees until such requests were complied with; and was followed by a second telegram from appellees, dated September 1st, inquiring

if the shipment had been commenced.    To this last telegram appellant responded, saying that shipments were not being made, and referred appellees to the telegram of August 13th, and to a letter of May 7th, from appellant to appellees.

We will not reproduce that letter of May 7th, nor other correspondence between the parties.    It is enough to say that an examination of it shows a persistent demand by appellant upon the appellees for the $7.94 which appellees had deducted from the amount due for the last car load of juice that was shipped on April 5th, and a refusal or evasion by the appellees of such demand.

The claim made by the appellees concerning their right to make such deduction was stated in their letter of May 5, 1892, to be because "when this car arrived, this car was fermenting badly and nearly all the packages were sprung and leaking more or less, so much so that we were obliged to dump the whole" of it into their vinegar stock, and such claim was never differently asserted until suit was begun.

This statement can mean only that the claimed loss was due to fermentation, and must be given higher credit than can be accorded to the testimony of one of the appellees given at the trial, that it was because of shortage in the number of gallons.    The first claim was made at the inception of the controversy, while recollection was fresh, and was before the controversy had ripened into the heat of a lawsuit.

It will be seen by inspection of the memorandum of contract, that appellant should " not be responsible for fermentation of juice if not ordered out before April 1, 1892." There is no claim made that appellees " ordered out " the car load that was shipped April 5th before April 1st, and it must follow that appellees withheld payment of the balance that was due from them for a cause not open to them.

The special finding by the jury, that the deduction was made because of " shortage," is based upon nothing but the testimony of one of the appellees, and is clearly against the weight of the evidence.    And, besides, the deliveries were

to be made on board cars at Lansing, and there was no evidence that the full quantity was not there delivered and in good condition.

The withholding of this amount, though small, after repeated demands for it, constituted a breach of contract by the appellees, and gave the appellant the right, if it so elect, to decline to further proceed on its part. As early as August 13th, appellant explicitly informed the appellees, by telegram, that when they should remit the balance of $7.94, their further orders would receive attention; and the implication was as strong as courteous conduct between business men requires, that until the remittance was made, further orders would not be given any attention. Therefore, when, on August 25th, the appellees ordered the remaining twenty-five car loads to be shipped, the appellant was justified in refusing attention to the order.

But it is urged by appellees that the amount was insignificant, and the withholding of it did not constitute a material breach of the contract; and the trial judge seems to have entertained a like view, for he modified an instruction, asked by appellant, to the effect that appellees could not recover unless they proved, among other things, that they had not refused to pay, according to the contract, for goods delivered, by adding to the instruction, " or if they had refused to pay any sum, that the same was insignificant in amount," etc. By way of illustration, rather than of argument, it might be asked, why, if the amount be too insignificant to constitute a material breach of the contract, by a refusal to pay it, was it not too insignificant for the appellees to insist upon withholding it?

The instruction as modified was equivalent to telling the jury that as a matter of law, the withholding of $7.94 from a bill of about five hundred dollars, owed by one to another, was an insignificant matter for which the person from whom it was withheld was without redress. Such is not the law, and a verdict secured upon an hypothesis that such is the law, is erroneous.

The question should not have been treated as one of

amount. The question, in such connection, was whether or not the appellees had kept the contract on their part. They had, by the acceptance of the contract, agreed to pay for goods contracted to be sold to them. Had they done so? If not, then they should not be entitled to recover for a refusal by the other contracting party to deliver more goods. If they might take seven dollars and ninety-four cents out of the contract price for one car load of goods, then they could, by the same right, take $317.60 out of the price for the whole forty car loads called for by the contract.

This court has, in Geary v. Bangs, 37 Ill. App. 301, laid down the rule to be as follows:

" The true ground is that a refusal to pay in accordance with the terms of the agreement is a breach which indicates that the one who is guilty of it does not intend to be bound by the contract, and therefore the other party may rescind it." See, also, The Hess Co. v. Dawson, 149 Ill. 138.

In Withers v. Reynolds, 2 Barn. & Adol. 882, it was held that under a contract to deliver three loads of straw at thirty-three shillings a load, to be paid as the loads were delivered, the refusal by Withers to pay for one load, for which he was behind, indicated that he did not intend to be bound by the contract and justified Reynolds in refusing to make a further delivery.

Counsel for appellees attempt to distinguish this case from those cited, on the ground that they were cases where payment for deliveries made was a condition precedent to a continuance of delivery, or of further performance, while this, they contend, was not. The written memorandum required the deliveries to be made " as wanted," prior to September 1, 1892, and the construction that the parties put upon it by their conduct, by appellees paying for all goods that were ordered, when received, (except the deduction referred to,) will be the construction that we will give to the contract, viz., that each shipment was to be paid for within, at least, a reasonable time after receipt, and was therefore a condition precedent to future shipments.

The views we have expressed render it immaterial to dis-

cuss the question concerning the modification of the contract by a further and subsequent agreement between the parties, to the effect that in case appellees did not provide as many packages at Lansing as would be required to hold all the vinegar and hard cider, the appellant would furnish them; and the other question whether the provision of the contract that the goods should be " taken " before September 1st, means that they should be shipped before that date, or merely ordered, and if the former, whether ordering, on August 25th, so much as twenty-five car loads, equal to about fifteen hundred barrels, to be put up and shipped in six days, was a reasonable notice in such regard.

Upon another trial, if one shall be had, all such questions are likely to be properly treated.

The judgment of the Circuit Court is reversed and the cause remanded.