CHARLES H. DUDLEY *vs.* WILLIAM H. WYE.

Norfolk. March 18, 1918. — May 25, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Contract*, Performance and breach.

In an action for breach of a contract to manufacture and deliver to the plaintiff one hundred and fifty dozen of Shaker knit sweaters of seven specified styles for about $9,000 in all, in which the defendant relied on the defence that he was warranted in cancelling the plaintiff's order by reason of a breach of the contract on the part of the . plaintiff, it appeared that before undertaking this contract the defendant had had no dealings with the plaintiff and knew nothing of his financial ability, that the goods to be manufactured for the plaintiff were of a special kind not commonly found on the market, that the work necessitated a considerable outlay for stock and labor and that the defendant was not to be paid for several months, that when the defendant took the order he told the plaintiff that "if he did not live up to his agreement the defendant would drop it," that the contract afterwards was modified by an agreement to include in it orders for eight white and twenty green sweaters to be made and delivered at once, that these twenty-eight sweaters were made and delivered promptly and payment, when due, was demanded, the price amounting to $127.50, that about a month after the payment became due the plaintiff paid $123.67 and about three weeks later paid the balance of $3.83, that in response to a request for payment nine days before the first payment was made the plaintiff had written, "I will send check now within a very few days. Weather conditions up in this part of the country during April have been frightful, putting business and collections in very bad shape," and that at the time of his first payment the plaintiff wrote "with reference to these first small invoices, I laid them out nearly three weeks ago for payment and through an oversight they became mislaid," and in paying these bills when long overdue the plaintiff deducted the discount to which he would have been entitled only on making the payments promptly. The judge, who heard the case without a jury, found that the plaintiff broke his contract in failing to pay for the twenty-eight sweaters when the price was due and ruled that this breach of contract was important enough to excuse the defendant from further performance of the contract on his part. Accordingly the judge found for the defendant. *Held*, that the finding of the judge, which was in substance that the promise of prompt payment for goods as delivered was an essential inducement to the defendant to enter into

the contract, was warranted and that upon this finding his ruling that the plaintiff's breach went to the root of the contract and justified the defendant in cancelling the rest of the order was correct.

CONTRACT to recover damages for breach of a contract to manufacture and deliver to the plaintiff one hundred and fifty dozen sweaters of specified styles, colors and sizes at specified prices, the order for the sweaters having been accepted by the defendant on February 14, 1916, and the times fixed for delivery being in July, August and September, 1916. Writ dated November 6, 1916.

In the Superior Court the case was referred to an auditor, who filed a report, which concluded as follows: "Should the court be of opinion, upon the evidence hereinbefore set forth, that the defendant, by reason of the failure of the plaintiff to make prompt payment of the bills of March 9 and 11, was justified in refusing to proceed with the contract, then my finding would be for the defendant."

Later the case was heard by *Hammond,* J., without a jury, upon the auditor's report and oral testimony.

The plaintiff asked the judge to make the following rulings:

"1. On all the evidence the plaintiff is entitled to recover.

"2. On the findings of fact of the auditor's report and on the evidence reported by him, judgment should be for the plaintiff."

"5. On all the evidence the defendant was not justified in refusing to perform his contract with the plaintiff.

"6. On the material evidence as reported by the auditor the defendant was not justified in refusing to perform his contract with the plaintiff."

"8. The orders of February 26 and March 6, 1916, from the plaintiff to the defendant filled March 9 and 11 respectively were contracts separate and distinct from the contract made February 14, 1916.

"9. There was no such delay in payment of the shipments of March 9 and 11 as justified the defendant in refusing to perform his contract made February 14, 1916.

"10. Even if there had been unreasonable delay in payment of the shipments of March 9 and 11, those shipments were not in execution of the contract here sued on and the plaintiff's right of recovery is not affected thereby.

"11. The defendant, having agreed in February, 1916, to furnish the plaintiff the goods in question upon terms of credit, was not entitled on the evidence to require a deposit or guarantee or prepayment by the plaintiff·in May, 1916, as a condition precedent to the performance of his contract.

"12. There is no evidence that the plaintiff was not financially able to perform his contract with the defendant.

"13. There is no evidence of facts on which the defendant could reasonably believe that the plaintiff was not financially able to perform his contract with the defendant.

"14. The plaintiff furnished the defendant all the assurances of financial responsibility that the circumstances called for or that the defendant reasonably requested prior to the defendant's refusal to perform his contract."

The judge refused to make any of these rulings. He made the findings and the ruling which are stated in the opinion and found for the defendant. The plaintiff alleged exceptions.

*W. T. Atwood*, for the plaintiff.

*G. V. Phipps*, for the defendant. ·

DE COURCY, J. This action was brought to recover damages for failure of the defendant to manufacture and deliver to the plaintiff a lot of Shaker knit sweaters; and the trial judge found for the defendant. The original contract, made on February 14, 1916, was for one hundred and fifty dozen, made up of seven specified grades, embracing different sizes and colors, deliveries to be in July, August and September. The terms of the sale were thirty days' credit with a discount of three per cent on bills paid within ten days. Subsequently orders were given for eight white and for twenty green sweaters, to be made and delivered at once; and these were delivered on March 9 and 11. Certain correspondence followed, and the defendant on May 9 notified the plaintiff to "consider the order for Fall cancelled." ·

1. The judge specifically found that the contract of February 14 was modified by an agreement that the eight white and twenty green sweaters ordered later should be deemed to be a portion of the one hundred and fifty dozen sweaters called for by that original order. In our opinion there was evidence in the correspondence between the parties to warrant the finding. Before these orders were sent (February 28 and March 6) the plaintiff had been

notified by the defendant that no more orders could be taken at the old prices, and an order sent on February 25 had been returned. On March 7 the plaintiff expressly wrote the defendant to "take these [the green sweaters] from my summer order." In the defendant's reply appears, " . . . I absolutely refuse to accept any more orders. . . . I will make the two orders for you, the White and the Green, and shall deduct them from the original order." The plaintiff expressed no dissent from this, and these sweaters were made, delivered and accepted.

The plaintiff, having failed to sustain his contention that the orders filled on March 9 and 11 were separate and distinct from the contract of February 14, now argues that these two items, even if considered as part of the original contract as modified, are severable from the original order. No such question of the divisibility of the contract appears to have been raised by the plaintiff before the auditor or the trial judge. But, assuming that this contention were open, it would not avail the plaintiff under the findings of the court. There were seven different styles of sweaters specified in the original order, each style number indicating a certain weight and grade of garment. The twenty-eight special sweaters did not correspond with any of the seven kinds. While it was agreed, that they should be regarded as a part of the modified original contract, the parties did not specify which of the seven styles they should be considered as taken from. They could only be taken from the contract as a whole; and the contract as modified was an entire one. A failure of part of the consideration, regarded as the inducement to enter into the contract, was a failure of the whole. *Mersey Steel & Iron Co.* v. *Naylor, Benzon & Co.* 9 App. Cas. 434. *Norrington* v. *Wright*, 115 U. S. 188. Cases like *Barlow Manuf. Co.* v. *Stone*, 200 Mass. 158, involving separable contracts, are not applicable.

2. The trial judge also found that "under this contract as so modified the sum of $36.67 became due on April 9, 1916, for the white sweaters and the sum of $90.83 on April 11, 1916, for the green sweaters; and that the plaintiff broke his contract in that he failed to pay these amounts until May 6, 1916, when he paid $123.67 and May 24, 1916, when he paid the balance $3.83." Plainly this finding was warranted by the evidence.

3. Upon the facts as found the judge ruled, that the plaintiff's breach of the contract was important enough to excuse the de-

fendant from further performing the contract; and therefore found for the defendant.

In determining whether the defendant was justified in cancelling the plaintiff's order on May 9, 1916, and refusing further to perform the contract it is important to view the facts then existing. Before the order of February 14, 1916, there had been no business dealings between the parties. The defendant's production of Shaker sweaters was only about twenty-five dozen per week. He knew nothing of the plaintiff's financial ability. According to his testimony he told the plaintiff that "the only reason he was open for more business was because he was dissatisfied with the people with whom he had been doing business; that if he did business with the plaintiff his terms would have to be strictly 3/10 net 30; that he would not do business under any other conditions." And again that "if he did not live up to his agreement the defendant would drop it regardless of the result." The bill for the first shipment, $36.67, was not paid when it became due April 9. Nor was the second, for $90.83, which became due on April 11. In response to the defendant's request (April 27) for payment the plaintiff wrote: "Will send check now within a very few days. Weather conditions up in this part of the country during April have been frightful, putting business and collections in very bad shape." Later the excuse given for the delay was (May 6) "with reference to these first small invoices, I laid them out nearly three weeks ago for payment and through an oversight they became mislaid." When the plaintiff sent a check (May 6) to pay the long overdue accounts he deducted the discount, to which he was not entitled.

The trial judge aptly summed up the situation as follows: "When the defendant wrote his letter of May 5, he was in this position. He was about to begin manufacturing for the plaintiff nine thousand dollars' worth of goods of a special kind not commonly found on the market, for which he was not to be paid for several months. The work necessitated a considerable outlay for stock and labor. The plaintiff was nearly a month in default in paying two small bills for the first instalment of goods and had written (apparently about a week before) promising to 'send check now within a very few days' and excusing the delay on the ground that weather conditions had been bad 'putting business and col-

lections in very bad shape.' Under these circumstances the defendant well might have thought that the plaintiff was obliged to rely on his collections to raise the money to pay a bill of $127 and that this default boded ill for the security of future payments. It cannot be fairly said I think that this breach was of such slight importance as to require the defendant, under circumstances justly warranting an inference that the plaintiff was hard up, to proceed with his contract and assume the risk of loss, the possibility of which was made evident by this default. The plaintiff was a trader and his failure to pay these small bills promptly under circumstances indicating difficulty in raising the money gave an importance to such breach quite out of proportion to the actual amount involved. I must believe that the promise of prompt payments was a material and important inducement to the defendant to make the contract."

In substance the judge has found that the promise of prompt payment for goods as delivered was an essential inducement to the defendant to enter into the contract. As it is often expressed, the plaintiff's breach went to the root of the contract, or to the whole consideration. While the case is close, we are of opinion that the ruling of the judge was correct in view of his findings of fact. As was said by this court in a similar case: "In such a state of things it can fairly be said that justice did not require the seller to continue to deliver goods, but that the default of the buyer was so serious and so far connected with the substance or consideration of the contract as to justify the seller in refusing to be further bound by it." *Eastern Forge Co.* v. *Corbin*, 182 Mass. 590, 593. *National Machine & Tool Co.* v. *Standard Shoe Machinery Co.* 181 Mass. 275. Morison, Principles of Rescission of Contracts, 55, 56, 89.

What has been said disposes of all the questions raised by the plaintiff's requests and not rendered immaterial by the findings of fact.

*Exceptions overruled.*