AMBLER, Respondent, vs. SINAIKO and others, Appellants.

*December 3, 1918—January 7, 1919.*

*Sales: Successive orders as parts of one transaction: Refusal to pay instalments: Future deliveries: Termination of contract.*

1. Successive orders for coal given by retail dealers and formally accepted by a wholesaler having been, in the correspondence and accounts of the parties, always considered and treated as being simply items in one continuing transaction, and no contention that they were separate contracts from which separate rights arose having been made at the trial of an action involving a claim of nonpayment and counterclaims of nondelivery, this court, in which that contention is made for the first time on appeal, treats such accepted orders as the parties treated them, not as independent contracts, but as a sale of goods with delivery as well as payment to be made in instalments.

2. In such case, under the uniform sales act (sub. 2, sec. 1684*t*—45, Stats.), the failure of the retailers to pay an instalment when due, together with their refusal to pay any further instalments until all the coal contracted for had been delivered, although much of it was not yet due to be delivered, justified the wholesaler in refusing to make further deliveries.

3. Where one party to an executory contract deliberately declares that he will not perform on his part, the other party may at his option treat the contract as terminated.

ESCHWEILER and OWEN, JJ., dissent.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

Action by the plaintiff, a wholesale dealer in Illinois coal at Chicago, to recover of defendants, who were retail dealers at Madison, a balance of about $1,200 alleged to be due on purchases of coal between July 10 and October 31, 1916.

The defendants by answer admitted the indebtedness claimed, but interposed three counterclaims for failure to deliver coal under three certain contracts, and claimed damages amounting to nearly $2,500.

The action was tried by the court. It appeared by the evidence that the parties had dealt together for some months prior to the transactions in issue; that orders were given from time to time, sometimes orally, sometimes by mail, and sometimes by telephone; some were accepted orally and some by letter, while the larger orders, which were not to be entirely filled at one delivery but in carload lots from time to time as wanted, were generally accepted by a formal acknowledgment stating the amount and kind of coal ordered, the price per ton, the place of delivery, the railroad route, and the time during which the shipments were to be made, with a memorandum of terms as follows: "Terms: Cash, not later than 20th of the month following shipment." The printed statements of account used by the plaintiff (as appears from one introduced in evidence) bore the following statement at the top: "Terms: Cash on or before the 15th for shipments of the previous month." There is no direct evidence that this agreement as to the time of pay-

ment was specifically made every time an order was made, but there seems to be no dispute but that both parties understood that payment for the shipments of any month was due at least by the 20th of the following month. A letter from the plaintiff to the defendants of November 10, 1916, states that all sales were made on the explicit understanding that settlement was to be made on the 10th of the following month, and this statement does not appear to have been challenged by the defendants.

The defendants' counterclaims were based upon the alleged failure of the plaintiff to fill three of the larger orders above mentioned, made respectively June 5, September 11, and September 19, 1916. The first of these orders was for twelve cars Franklin county stove coal and six cars of Franklin county lump, and the same was accepted by one of the formal acknowledgments above mentioned specifying that shipment was to be made "during June to March, 1917." The second order was for five cars of Pocahontas mine-run coal, and was accepted by letter specifying that one or two cars were to be shipped as soon as the mines could care for them and the remaining three "as ordered by you between date and next April 1st." The third order was for twelve cars White Star lump coal, and was accepted by one of the formal acknowledgments aforesaid specifying that four cars were to be delivered in September, "balance as ordered."

It appears by the evidence that the six cars of Franklin county lump named in the first order were delivered in August, 1916, and that on the 31st of that month one car of Franklin county stove was delivered, and that no more was ever delivered on that order. No cars were ever delivered under the second order. Eight cars were delivered under the third order in September and October, the last delivery being October 18th. So the failures to deliver for which damages are claimed by the defendants are eleven cars under the first order, five cars under the second order, and four cars under the third order. The plaintiff claims, by way of defense to

the counterclaims, that in the latter part of October the defendants ordered him to ship no further coal until it was specifically ordered, whereupon he ceased shipping coal, and that on the 20th day of November the defendants breached their contracts by failing to pay for the coal delivered in October and prior thereto, and that for this reason he refused to go on with the contracts. As to the second counterclaim the plaintiff further claims that the contract was canceled by the substitution of another kind of coal therefor and that he was afterwards directed by defendants not to ship the same. The book accounts kept by the parties since May 4th were in substantial agreement; two cars were shipped in May, aggregating $154.94, for which defendants paid July 8th; two cars were shipped in June, aggregating $122.45, for which defendants paid August 14th; eleven cars were shipped in July and August, aggregating about $700; in September fourteen cars, aggregating about $950; in October eighteen cars, aggregating about $1,950; and on November 16th two cars of coke, aggregating $192.40. No payments were made in August; September 8th $400 was paid, October 15th $500, November 4th $1,000, and November 14th $600. In the latter part of October the plaintiff made frequent requests for additional payments and the defendants made the payments above set forth, amounting to $1,600, in the first half of November, but still leaving over $1,000 unpaid on the account for coal delivered before November 1st. On November 21st plaintiff wrote requesting a check for the balance of this account and threatening to draw through the bank if he did not receive it, and on the 22d wrote that if the check was not received by the 25th of the month the account would be put in the hands of attorneys for collection. On the 22d the defendants caused the following letter to be sent to the plaintiff by the president of the First National Bank at Madison:

"Your letter of the 21st inst., addressed to Sinaiko Bros., has been brought to our attention, and we are writing you

today at their request to state that they have this day deposited with us $1,000 to be remitted to you when you have made shipment of the remaining coal which they allege is due them under their existing contracts.

"They indicate that they are still entitled to the following shipments:

"Five (5) cars Pocahontas mine-run;

"Eleven (11) cars Franklin county No. 2 nut;

"Four (4) cars White Star lump.

"They appear to have contracted for this coal and consider that they will be seriously damaged if same is not forthcoming without further delay.

"We shall be glad to hear from you with any suggestions you may have to offer on the subject. We desire to say that we have entire confidence in these people and believe they are in a position to meet their obligations in a consistent manner if the coal is furnished to the extent indicated."

To this letter plaintiff replied to the defendants on November 23d, stating among other things that unless a check for the amount due up to November 1st was received by November 27th they should consider "your contract for future shipments" canceled and suit would be instituted at once.

The court found that the contracts were made as stated, that the defendants never released them, and that the contracts by their terms required payment for all coal shipped not later than the 20th of the following month; also

"That plaintiff shipped all coal ordered by defendants under either of the said three contracts until the middle or latter part of October, 1916, when defendants directed the plaintiff to ship no more coal under these three contracts until it was ordered by the defendants; that thereafter and during the first half of November, 1916, the defendants ordered the plaintiff to ship two cars of Franklin county coal under the contract of June 5, 1916, and three cars of lump coal under their contract of September 19, 1916; that before plaintiff was required to ship further coal under the three contracts found above, the defendants breached their part of these contracts by failing to make payments as required by the terms of said contracts.

"That plaintiff, prior to November 20, 1916, notified defendants that they must comply with the provisions of the contract requiring payment by the 20th of the month.

"That defendants breached their contract by failing to pay on November 20, 1916, for the coal delivered prior to November 1, 1916."

The court also found that the defendants ordered five cars of coal during the first half of November (before their default in payment of November 20th), which the plaintiff failed to deliver, and that defendants were entitled to recover $289.50 for such default, which sum the court deducted from the plaintiff's claim and rendered judgment for the plaintiff for the balance due. From this judgment the defendants appeal.

*Charles G. Riley*, attorney, and *Elmore T. Elver*, of counsel, both of Madison, for the appellants.

For the respondent there was a brief by *Tenney, Tenney & Reynolds* of Madison, and oral argument by *E. J. Reynolds*.

WINSLOW, C. J. The findings of the court to the effect that in October the defendants ordered the plaintiff to stop all shipments of coal until further orders, and that during the first part of November they ordered two cars under the first contract and three cars under the third, which were never delivered, and that no further orders to ship were given before November 20th, when defendants declined to pay and thus (as plaintiff claims) breached the contracts, are sufficiently supported by evidence and cannot be disturbed.

But the defendants claim that, even conceding these findings to be true, there was no default on the first contract because it was a separate and independent contract, that only one carload of coal had been delivered under it, and that on August 31st the defendants' payments of $400 in September and $500 in October more than paid for all the coal delivered in July and August, and hence that there was

nothing due on this contract in November and no breach by the failure to pay at that time.

This contention seems now to be made for the first time. We discover no traces of it in the trial record. The great difficulty with it is that it is quite clear that the parties themselves never treated their transactions as separate transactions, but all as one continuing and continuous deal. Both parties kept their books in that way. Their accounts were simply running accounts upon which payments were made from time to time, not to be applied to any particular shipment or contract but upon the account generally. The so-called separate contracts were considered and treated simply as parts of the general deal, as items in one continuing transaction. The correspondence shows that no claim of separate contracts or of rights arising therefrom was made even when the plaintiff was most insistent in his demands for payment of the whole October balance on November 20th. When the letter sent on behalf of the defendants by their banker on November 22d was written there was an excellent opportunity to make this claim with force, but it is clear that there was no such thought. Had they then said to the plaintiff, "You contracted to sell us twelve cars of stove coal, you have sent but one, for which we have paid, we are not in default on this contract, and we demand that you continue to ship coal under it notwithstanding our failure to pay under other contracts," the proposition might have been difficult for the plaintiff to meet; but it is evident from that letter as well as from other letters in evidence and the accounts kept by the parties that the formal contracts were regarded by both parties as incidents of one long transaction, rather than as separate transactions by themselves, as orders rather than as independent contracts. We know of no reason why they should not now be treated as the parties chose to treat them, especially when the contention is first made in the court of last resort.

Treating the case on this basis, we have a case of sale of

goods with delivery as well as payment to be made in in-. stalments, and we squarely meet the question whether defendants' failure to pay the amount due on November 20th justified the plaintiff in declining to make any further deliveries, or whether the plaintiff was required to go on and fill its contracts notwithstanding defendants' default.

On this question the authorities are not in entire accord. For a review of the cases see *Quarton v. American L. B. Co.* 143 Iowa, 517, 121 N. W. 1009, 32 L. R. A. n. s. 1, and note. In this court see *Campbell & Cameron Co. v. Weisse,* 121 Wis. 491, 99 N. W. 340, also *German American Bank v.* *Webster M. Co.* 144 Wis. 314, 128 N. W. 48. In this state the matter is now unquestionably governed by the uniform sales act (sub. 2, sec. 1684*t*—45, Stats.), which provides in substance that, where there is a contract for the sale of goods to be delivered and paid for in instalments and there is a defective delivery of or failure to pay for an instalment, the question whether the breach is so material as to justify the injured party in refusing to go on with the contract and suing for his entire damages at once depends in each case "on the terms of the contract and the circumstances of the case."

Applying this rule to the present case, there seems to us to be no doubt that the refusal of the defendants to pay the amount due on November 20th was so material as to justify the plaintiff in his refusal to make further deliveries. A mere neglect to pay an instalment for a time might not be sufficient, but here there was more. As we read the letter of November 22d, it was a plain refusal to make any further payments on coal until *all* the coal contracted for had been delivered—although much of it was not yet due to be delivered. That the plaintiff so understood the letter there can be no doubt. This is clearly shown by his reply of November 22d, in which he says:

"We are this morning in receipt of a letter from the First National Bank of Madison, Wisconsin, advising that you

have deposited $1,000 with them to be remitted when we ship you five cars of Pocahontas mine-run coal, eleven cars of Franklin county coal, four cars of White Star lump coal."

Later in the same letter the plaintiff says:

"The money you owe us is long past due, and now you propose, not to give it to us so we can use it in our business, but to deposit it where it is of no use to us, and hold it out on us until possibly April 1st."

This shows that the plaintiff construed the letter as a refusal to pay any further monthly instalments until all the coal had been delivered under all the orders.

So far as appears from the evidence the defendants never notified the plaintiff that he had construed the letter of November 22d wrongly; apparently they were content to have it so construed. This was practically a repudiation of all provisions of the contracts requiring payments in monthly instalments. It was not mere neglect or refusal to pay one instalment, but a refusal to be bound by one of the material provisions of the contract in the future while insisting on full performance by the plaintiff. Such a breach must be regarded as a material one, which justifies refusal to further perform on the part of the other party.

There is another well established principle which seems decisive of the case, namely, the principle that, where one party to an executory contract deliberately declares that he will not perform on his part, the other party may at his option treat the contract as terminated. *Woodman v. Blue Grass L. Co.* 125 Wis. 489, 103 N. W. 236, 104 N. W. 920. That is, in effect, what the defendants did here when they declined to pay anything until all of the coal had been delivered.

*By the Court.*—Judgment affirmed.

Ambler v. Sinaiko, 168 Wis. 286.

ESCHWEILER, J. *(dissenting)*. In this case there is no evidence of the parties ever having, at any one time, made any agreement as to their subsequent dealings and fixing their respective rights and liabilities. The orders are all separate and independent, never referring to others or to any prior arrangement, with different provisions as to price, quantities, and times of delivery, and some differences as to times of payment; the plaintiff asserting at times that payments are to be on the 10th, the 15th, or the 20th, respectively, of the month following deliveries, and all particular provisions as to times of payments had at times been waived.

I think these orders were separate and independent contracts as a matter of law, and that the method of payments from time to time did not alter their legal character.

Evidently a cancellation of or refusal to accept under any one order by defendants could not legally have justified plaintiff in refusing to ship under other then outstanding orders.

In Mr. Proudfit's letter of November 22d stating the deposit of the $1,000, he expressly refers to shipments "due them under their existing *contracts*." This would seem a fairly reasonable notice to plaintiff that what he, plaintiff, considered merely separate orders in the course of one transaction, were, in the estimation of defendants, of the dignity of separate contracts. There were either orders under one contract or separate contracts. I think the defendants through Mr. Proudfit notified the plaintiff concisely and accurately that they claimed rights under several independent contracts.

The letter of plaintiff of November 23d, declaring his intention to call all transactions at an end, was written at a time of a rising market, as would appear from the testimony and findings herein, even without resort to common knowledge as to the then situation. This fact, I think, is entitled to great weight in considering the acts of the parties. In this letter plaintiff expresses his surprise upon three grounds,

and those, with the statement that there was then due and unpaid $1,011.38 (only $11.38 more than the deposit with the Madison bank), are the only grounds upon which it can be claimed from the letter itself he based his right to refuse to make any further shipments; and these grounds, which were also asserted by plaintiff in his verified reply, were as follows: (1) That the order for five cars of Pocahontas had been canceled by defendants. This assertion was found by the court to be false. (2) That the order for four cars of White Star had also been canceled by defendants. This assertion was also found by the court to be false. (3) That the eleven cars of Franklin county coal demanded by defendants were part of an order of eighteen cars, of which eleven had been shipped, leaving nine instead of eleven, and this order was subject to delivery between June, 1916, and March 31, 1917, and that there remain four months to complete the order, and in effect claiming that he had until the end of that period to hold all deliveries.

By this letter, therefore, plaintiff expressly repudiated any obligation to ship either of the respective orders of five cars of Pocahontas and four cars of White Star for reasons which the court has found were not supported by the facts and therefore false, and in effect claimed the right to withhold delivery on the other.

If the transactions between the parties were in effect one contract, as held by the majority, then there seems here to have been a positive, definite declaration, based upon mistake if not falsehood, of a refusal of recognition of a substantial part of such contract and such as would warrant defendants to consider it an intention by plaintiff to abandon the contract. It should be noted that nowhere in this letter does plaintiff consent, even if the $1,011.38 is paid, to recognize any rights in defendants under either of these two orders.

Under any consideration of the relationship between the parties I think it is evident that the defendants had the right to demand delivery of some if not all of these several orders

and to have until the 20th of the month following delivery to pay for the same. The plaintiff took the position, however, that there were no such orders in existence any longer. If the defendants ought to have immediately answered this peremptory letter of plaintiff and explained any misunderstanding, if such there was as to whether plaintiff was correct in surmising that the money was to be withheld until. April 1st, the same rule would require plaintiff to promptly notify defendants, and before the time limit set of November 27th had expired, that if defendants did pay they would be recognized as having rights under these two orders.

That the breach must be substantial to warrant a seller in taking the position assumed by plaintiff is the law of this state by the statutes and decisions cited in the majority opinion.

Many authorities hold, and with good reason than there must be a further showing of intention to abandon a contract. *West v. Bechtel,* 125 Mich. 144, 84 N. W. 69; *Welsh v. Michigan M. Co.* 161 Mich. 16, 125 N. W. 692; *Empire R. M. Co. v. Morris,* 77 N. J. Law, 498, 72 Atl. 1009; *Quarton v. American L. B. Co.* 143 Iowa, 517, 121 N. W. 1009, 32 L. R. A. N. S. 1.

If the amount of coal to be delivered as indicated in Mr. Proudfit's letter was unreasonable in view of any contingencies of transportation or mining, or for any reason, the plaintiff in honesty and good faith should have said so. The mere making of an unwarranted claim for performance during the life of a contract is not such a breach as would warrant cancellation. *Nat. C. Co. v. Hudson River W. P. Co.* 192 N. Y. 209, 216, 84 N. E. 965; 13 Corp. Jur. 658.

The tone of Mr. Proudfit's letter inviting, not repelling, suggestions from plaintiff on the subject, the deposit of the $1,000, more than the amount ($914.28) ultimately found due the plaintiff, the demand for more coal under the orders, absolutely inconsistent with an intention to abandon; the rising market under which the defendants would so nat-

urally and reasonably hold onto rights secured to them at prices lower than then existing; and on the other hand the absolute repudiation by plaintiff of any liability as to the then existing valid orders on mistaken if not false grounds; the rising market where plaintiff would profit by breaching his obligation, all presented such a situation that I think the court should have said that the plaintiff was in default and liable.

I am authorized to state that Justice OWEN concurs in this dissent.