Chess & Wymond Co. v. La Crosse Box Co. 173 Wis. 382.

CHESS & WYMOND COMPANY, Respondent, vs. LA CROSSE BOX COMPANY, Appellant.

*January 14—February 8, 1921.*

*Sales: Defects in quality: Notice to seller: Single or several contracts: Construction by parties: Breach: Failure to pay for quantity of goods received: Remedy of seller.*

1. Under sec. 1684*t*—19, Stats., the buyer of kiln-dried rotary-cut gum veneer which accepted the material on delivery without giving the seller notice of defects in quality could not, when sued by the seller for the price, recover on its counterclaim for damages for defects in quality.

2. Where the parties to a contract of sale, effected by two separate orders, treated the matter of the time for shipment of the goods as if covered by a single contract, their construction will be followed and the contract will be treated as single. *Ambler v. Sinaiko,* 168 Wis. 286, followed.

3. A renunciation by a party of the terms of a contract of sale is a breach of contract which justifies the opposite party in treating the contract as broken and rescinding it at his election.

4. Under sec. 1684*t*—45, Stats., where the buyer of gum veneer not only refused payment, but proposed to hold moneys then in its hands belonging to the seller as security for the further performance of its contract, which constituted a clear departure from the contract and amounted to an announcement that the buyer had declined to carry it out, the seller was justified in its refusal further to perform.

APPEAL from a judgment of the circuit court for La Crosse county: E. C. HIGBEE, Circuit Judge. *Affirmed.*

Breach of contract. On August 17, 1917, one John L. Moore, a broker, of Jackson, Mississippi, sent the defendant quotations on twenty-six cars of kiln-dried rotary-cut gum veneer of different sizes and dimensions, price to be $40 per M. f. o. b. cars La Crosse. On August 30th the defendant sent to Moore the following order:

"You may enter our order as follows:
3-16"—16" wide—48"-60" long—3 cars.
1-4" —16" wide—40"-60" long—2 cars.
1-8" —16" wide—48"-60" long—1 car.
"If these cars prove satisfactory as to quality and service, we will be pleased to send you the balance of the order. Shipments to start at once. Cut-downs not to exceed 10%.
"Yours truly,
"LA CROSSE BOX CO.
"A. R. Scott, President."

Moore placed this order with the plaintiff, who in the meantime had opened correspondence with the defendant looking to a direct sale. By letter dated September 11, 1917, the defendant accepted plaintiff's proposition for five cars. The plaintiff did not receive the order given by defendant to Moore until after it had commenced corre-

spondence with the defendant in respect to a sale direct, and in reply to defendant's letter of September 11th the plaintiff wrote defendant as follows, under date of September 15, 1917:

"Beg to advise that since first taking this matter up with you we have received an order from you for six cars of veneer through Mr. John L. Moore of Jackson, Miss. We will make all possible speed in getting this out (both orders), but just now we are slightly handicapped by the fact that we are putting in some new machinery, but will do our best."

Four cars covered by the specifications of the first order were shipped and received, the last one being received February 26, 1918. The amount due for the car, deducting freight, was $393.16. The plaintiff shipped and the defendant received two cars of material to apply on the five-car contract, the second car being invoiced November 17, 1917. On January 17, 1918, the plaintiff wrote the defendant asking for a remittance of $1,002.95, open account, then over sixty days old. On January 29, 1918, the plaintiff wrote the defendant as follows:

"Upon examination of our books this morning we find that you owe us $2,825.94. We must insist that this account be paid. If we do not hear from you in the next four or five days we will take the liberty of drawing on you at sight."

On February 7th the plaintiff advised the defendant that it had drawn a sight draft for $2,825.94. On February 20th the draft was returned unpaid. On March 4th the National Bank of La Crosse forwarded to the plaintiff a draft on defendant's account for $2,390.70, with this statement:

"There is a balance of $393.16 due on the last car and this amount the *La Crosse Box Company* is prepared to pay on arrival of another car on the contract still unfulfilled. They claim there are several more cars due and are taking this means of making sure that you ship all the remaining cars contracted for."

On March 16th the plaintiff wrote the bank disputing the right of the defendant to hold the money to secure the performance of the contract and advising that future shipments would be made only with draft attached to bill of lading. On March 22, 1918, the defendant wrote the plaintiff as follows:

"Will you please advise us when you expect to ship the remaining five cars that are still due us on our order?"

On March 26th, in reply to the letter of March 22d, the plaintiff wrote the defendant:

"We have nothing to say in regard to any more deliveries until you have paid our account in full."

The amount not having been paid, on April 22d the plaintiff wrote the defendant canceling the contract. On April 24th the defendant wrote the plaintiff that it would pay on the 15th day of May, with interest at the rate of eight per cent. per annum. There were further negotiations, the plaintiff endeavoring to secure payment, which was refused by the defendant, and the defendant urging shipments, which were not made by the plaintiff because of the defendant's refusal to pay.

This action was begun by the plaintiff to collect the sum of $393.16 with interest from January 3, 1918.

The defendant answered by way of counterclaim, alleged that the gum veneer was to be kiln dried in flat condition ready for immediate use, admitted the receipt of the six cars, admitted that the last car of material received was not paid for, alleged that the material received was not kiln dried, was wet, not in compliance with the contract, and unfit for the purpose for which it was purchased, alleged by way of counterclaim that it was put to an expense of $409.07 in preparing the material for use and in making it comply with the terms of the contract, and by way of second counterclaim claimed special damages by reason of defects

of boxes manufactured therefrom to the amount of $200, and for its third counterclaim alleged that it had been put to the expense of $1,800 in procuring the material not delivered in the open market, and asked for judgment of $2,409.07.

At the close of the testimony the court directed the jury to return a verdict for the plaintiff in the sum of $393.16, and judgment was entered for the plaintiff accordingly, from which the defendant appeals.

The cause was submitted for the appellant on the brief of *George H. Gordon, Law & Gordon* of La Crosse, and for the respondent on that of *McConnell & Schweizer* of La Crosse.

ROSENBERRY, J.    The errors assigned by the defendant raise two questions:

First.    Was there an acceptance by the defendant of the goods shipped by the plaintiff within the meaning of sec. 1684*t*—49, Stats., which released the plaintiff, the seller, from liability?

Second.    Did the refusal of the defendant to pay for the instalment due January 3, 1918, amount to a material breach, justifying the injured party in treating the whole contract as broken within the provisions of sub. 2, sec. 1684*t*—45, Stats.?

Detailed errors are assigned, which, under the disposition we make of the case, it is not necessary for us to consider.

It is undisputed that invoices were rendered with each of the shipments and that by the terms of such invoices payment was to be made within thirty days net. No objection being made to the time of payment as specified in the invoice, the trial court was of the opinion that it became, in effect, a part of the contract, and we shall so treat it. Otherwise the invoices would have been payable upon receipt. The only complaint made by the defendant prior to its refusal to pay for the car of material received January 3, 1918, was in its letter of January 23, 1918, as follows:

"Commencing in about sixty days and at the rate of one

car per week, we expect to take in thirty cars of 3-16 and $\frac{1}{4}$ inch gum and yellow pine veneer and we will be pleased to receive your quotations. The stock must be dried more thoroughly than what you have shipped us heretofore. Some of the stock that you shipped us before seemed to be as green as if it had just come from the log, and consequently it cost us considerable time and money to work. Quite a number of boxes were returned to us on account of the large cracks between the boards. Also some of the boxes were warped out of shape and were returned for that reason.

"We await your quotations on veneer that is in dry condition and ready to be used."

This letter did not apprise the plaintiff that the defendant expected to make any claim for damages on account of the quality of the material which it had received prior thereto. It appeared, without dispute, from the testimony of the officers of the defendant company that inspection of the material might have been made as it was received and that had an inspection been made the claimed defects in quality would have been disclosed. The trial court held that under the provisions of sec. 1684t—49, which provides "but, if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor," the defendant did not, within a reasonable time, give notice of its claim to the plaintiff. The holding of the trial court is fully warranted by the undisputed evidence. The first car was received by the defendant on November 14, 1917, more than two months prior to the time of the writing of the letter of January 23d. Although some complaint is made in the letter of January 23d, no claim for damages is made by reason of the defective condition of the material shipped by the plaintiff. There is nothing in the evidence to show that the defendant might not have discovered, by the exercise of ordinary diligence, the actual condition of the material accepted several weeks prior to January 18th. A buyer is certainly under obligations to use reasonable diligence in

ascertaining the condition of the goods which he has received. The property was in the possession of the buyer and subject to its unlimited control. No excuse is offered for the failure of the buyer to discover the condition of the material, and it knew, or ought to have known, of such condition long prior to January 23, 1918. The material to be delivered was kiln-dried rotary-cut gum veneer. The letter of January 23, 1918, is a complaint that the stock was not thoroughly dried, and nowhere in the letter is there an intimation that the defendant claimed a breach of any promise or warranty on the part of the plaintiff. The defendant, having accepted the material without notice of defect in quality, could not recover on its counterclaim for damages for defect in quality.

In this case there were two offers which were accepted by the letter of September 15th. While there were really two contracts, the transactions were treated by both parties as a single contract. In the letter of acceptance the plaintiff says: "We will make all possible speed to get this out," apparently referring to the material covered by the two offers which were being accepted by it. There was no demand by the defendant setting forth its right to performance of the contract under which it was not in default. The advice of the bank was that the defendant was holding the balance of $393.16 as a "means of making sure that you will ship all the remaining cars contracted for." In its letter of March 22d the defendant said: "Will you please advise us when you expect to ship the remaining five cars that are still due us on our order?" The parties having treated the matter, in that respect, as if covered by the single contract, they brought the matter squarely within *Ambler v. Sinaiko,* 168 Wis. 286, 170 N. W. 270.

Did the refusal by the defendant to pay for the car delivered January 3, 1918, coupled with the declaration of the defendant that it proposed to hold the unpaid balance as security for the further performance of the contract, amount

to a material breach justifying the plaintiff in treating the contract as broken under the provisions of sub. 2, sec. 1684t—45? By that section it is provided:

"Where there is a contract to sell goods to be delivered by stated instalments, which are to be separately paid for, and the seller makes defective deliveries in respect of one or more instalments, or the buyer neglects or refuses to take delivery of or pay for one or more instalments, it depends in each case on the terms of the contract and the circumstances of the case, whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken."

It was said in *Campbell & Cameron Co. v. Weisse,* 121 Wis. 491, 99 N. W. 340, that a party might insist upon full performance of a contract by having the quantity purchased delivered, though the party so insisting be in default as to payments for material delivered, upon the ground that the payment for such deliveries is not a condition precedent to the complete performance of the contract by the seller. In the *Campbell & Cameron Co. Case* there was a contract for the sale of bark, which was to be loaded at Pratt's Junction, measured and accepted at Sheboygan Falls, and paid for spot cash within ten days from receipt of cars. Between December 30, 1901, and January 13, 1902, the seller delivered eight carloads of bark, and a dispute arose as to the measurement of the bark, as a result of which the seller refused to deliver more, whereupon the buyer refused full payment on the shipments that had been made and received on the ground that the seller had breached its contract. It will be seen, therefore, that the general proposition there stated does not apply to a case where the seller is not in default and the buyer has refused to make a payment due under the terms of the contract.

Prior to the enactment of the uniform sales act the great

weight of authority in this country sustained the proposition that failure to pay for one instalment by the buyer excuses the seller from delivering the rest, and this generally without regard to the reason for the buyer's failure. 2 Williston, Contracts, § 867, and cases there cited; 32 L. R. A. N. S. note p. 2. The matter is thoroughly treated in 5 Page, Contracts, at §§ 3008–3022. A renunciation by one party of the terms of a contract of sale is, under all the authorities, a breach of the contract and justifies the opposite party in treating the contract as broken and rescinding and avoiding it at his election. *Murphy v. Sagola L. Co.* 125 Wis. 363, 103 N. W. 1113; 5 Page, Contracts, § 3013.

In this case we are not dealing with the mere inadvertence of the buyer to make payment for an instalment nor with a situation where payment is delayed by reason of some controversy as to quantity or quality, but with a straight-out refusal to pay in accordance with the terms of the contract. This, as was held in *Ambler v. Sinaiko,* 168 Wis. 286, 170 N. W. 270, constitutes, as a matter of law, a breach of the contract. This is true both under the uniform sales act and under the law as it stood prior to the passage of that act. While in a particular case, whether the breach by reason of the failure to deliver an instalment or to accept and pay for it is a material breach or not is generally a question for the jury (*E. I. Dupont de Nemours P. Co. v. United Z. & C. Co.* 85 N. J. Law, 416, 89 Atl. 992), where the conduct of the buyer amounts to a renunciation of the contract the seller may elect to treat it as a breach.

In this case the buyer not only refused payment, but proposed to hold the moneys then in his hands belonging to the plaintiff as security for the further performance of the contract. This constituted a clear departure from the contract and amounted, as was said in *Murphy v. Sagola L. Co.* 125 Wis. 363, 103 N. W. 1113, to an announcement that the buyer had declined to carry out the contract according to its terms and justified the plaintiff in its refusal to further

perform.  *Norrington v. Wright,* 115 U. S. 188; 6 Sup. Ct. 12.  See, also, *Dow C. Co. v. Detroit C. Works,* 208 Mich. 157, 175 N. W. 269.

The defendant having breached its contract and the plaintiff having elected to treat the contract as at an end, the defendant had no right to require further deliveries.  It was therefore not entitled to recover on its counterclaim for failure to deliver.

*By the Court.*—Judgment affirmed.