ILLGES, Plaintiff and Respondent, vs. CONGDON, Defendant and Appellant: HAMM, Interpleaded Defendant and Respondent.*

*September 11—December 4, 1945.*

* Motion for rehearing denied, with $25 costs, on February 15, 1946.

88

For the appellant there were briefs by *Godfrey & Pfeil* of Elkhorn, and oral argument by *A. L. Godfrey.*

For the respondent George M. Illges there were briefs by *Sheldon & Freytag* of Elkhorn, and oral argument by *William A. Sheldon.*

*R. Stanley Kelly* of Burlington, for the respondent John Hamm.

BARLOW, J.   No party to the action questions the terms of the contract as found by the court.   We have some difficulty finding there was a mutual assent by the parties to such an

agreement so as to make a binding contract, and no doubt the court had some difficulty on this same subject. However, no question being raised and the parties agreeing this is the contract that Congdon terminated, we will examine the findings which defendant objects to, which are as follows:

"18. That plaintiff and defendant have done everything within their power to carry out the contract in good faith.

"19. That the defendant had no substantial cause for complaint as to the performance of the plaintiff and the said interpleaded defendant."

Other findings which may be material are:

"21. That none of the reasons assigned by defendant in justification of his termination of the contract went to the heart of the contract or constituted a material breach by either the plaintiff or the interpleaded defendant.

"22. That defendant wrongfully terminated the contract and prohibited further performance when only about one tenth of the logs agreed upon had been cut."

Appellant contends that refusal of plaintiff and interpleaded defendant to recognize the terms and conditions of the contract, which the trial court found they had entered into, and their attempt to enforce a new and different contract, gave the defendant a legal right to withdraw and abandon the work. Respondents contend that disputes over the conduct of the operations and alleged breaches of the contract by respondents were incident to and did not go to the heart of the contract, and that it was purely a question of accounting.

"As a general rule, rescission of a contract is not permitted for a casual, technical, or unimportant breach or failure of performance, but only for a breach so substantial as to tend to defeat the very object of the contract." *Gedanke v. Wisconsin Evaporated Milk Co.* (1934) 215 Wis. 370, 375, 377, 254 N. W. 660.

"The determining question is whether the buyer was refusing to live up to the terms of the contract, whether he is in

effect making a new contract. The courts will not force upon the parties contractual obligations into which they have not entered voluntarily. Thus, in such cases it is the intention of the party, not the extent of his default, which is all-important. *Murphy v. Sagola Lumber Co.* 125 Wis. 363, 103 N. W. 1113; *Ambler v. Sinaiko,* 168 Wis. 286, 170 N. W. 270; *Genesee Fruit Co. v. Barrett,* 67 Ill. App. 673; *Quarton v. American Law Book Co.* 143 Iowa, 517, 121 N. W. 1009, 32 L. R. A. (N. S.) 1; 29 Law Quarterly Review, 61, 75; 5 Page, Contracts, p. 5326, sec. 3013." *Gedanke v. Wisconsin Evaporated Milk Co., supra.*

Under the terms of the contract as found by the trial court, there were no expenses for which Illges was entitled to reimbursement from the proceeds of the lumber sold. Paragraph 6 (a) of the findings refers especially to dry-kiln installation, which they agreed not to install, or to expenses other than the cost of production or sale. As the lumber was sold, Congdon was to receive $15 per thousand board feet, which was the first money to be paid from receipts. In place of Congdon's receiving this money, it was used for expenses of operation by Hamm and Illges. Likewise Congdon was to receive one half of the slabs, which it appears he intended to use for firewood. Hamm, in violation of the contract, sold the slab wood and converted the money to his own use for operating expense. Hamm paid to himself seventy-five cents per hour, contrary to the terms of the contract as found by the court. This was a joint enterprise and no one had any right to appropriate the receipts to his own use. The only way the purpose of the contract could be carried out was for the receipts to be placed in a general fund and disbursed in accordance with the terms of the contract, which was $15 per thousand board feet to Congdon for timber, and $30 per thousand board feet to Illges and Hamm thereafter for the expense of logging, manufacture of lumber, and sale of the lumber, any balance to be paid one

third to each. It was the duty of Hamm and Illges to arrange their own finances if any additional money was needed. This money was to be provided by Illges and not from the joint funds. Payments were due to Congdon immediately when the lumber was sold and money received in payment for it.

According to respondents' figures the cost of manufacturing seventy thousand feet of lumber was $3,875.07, or $55.30 per thousand. The trial court in his opinion states he "takes judicial knowledge of the fact that in establishing any industrial enterprise the cost of getting started, machinery set up, etc., as well as initial general overhead, makes the cost of the first production higher than the cost when produced in considerable quantities." While we can agree with this as a general proposition, it must be remembered this was a portable saw rig, and according to the pay roll the average number of men employed daily was two, outside of Hamm. An examination of the pay roll and expense items shows this was spread quite uniformly over the entire period of operations from February 6th to October 1st, which would mean it would vary but little, if at all, during the entire operations, if all items were permitted to be included in the cost of production. The average value of the lumber produced, as found by the court, was approximately $67 per thousand. To permit respondents to carry on under what was in effect the making of a new contract and disburse all of the receipts for their own purpose would be such a breach so substantial as to defeat the very object of the contract. "Under different situations, different tests of what constitutes a material and substantial default may be used. That which under one set of circumstances may be considered too trivial to justify rescission, under other circumstances may be held to be so material as to prevent substantial performance. *Dudley v. Wye*, 230 Mass. 350, 119 N. E. 790." *Gedanke v. Wisconsin Evaporated Milk Co., supra.*

The conduct of respondents was not a technical or unimportant breach or failure of performance due to mere inadvertence, but was an attempt on the part of respondents to enforce the terms of a new contract which had never been agreed to or entered into between the parties. It was a deliberate violation of the terms of the contract and respondents, by their conduct, renunciated the contract as found by the court. Whether the refusal of plaintiff and interpleaded defendant to carry out the terms of this contract was such material breach as to warrant rescission is a question of whether it is more conformable to justice to permit the defendant to rescind it or on the other hand to require him to perform his promise and bring an action for damages. The wilfulness of the refusal on the part of the wrongdoer is a matter that can properly be taken into consideration in determining this question, as the law is less inclined to require the injured party to perform and sue for damages if a breach is wilful. Restatement, 1 Contracts, p. 403, sec. 275. "A breach of an express or implied condition going to the essence of the contract justifies its termination." 17 C. J. S., Contracts, p. 911, sec. 425. A renunciation by a party of the terms of a contract is a breach of contract which justifies the opposite party in treating it as broken and rescinding it at his election. *Chess & Wymond Co. v. La Crosse Box Co.* (1921) 173 Wis. 382, 181 N. W. 313. It is considered that the conduct of the respondents constituted a material breach of the contract, which permitted the appellant to rescind in the manner in which he did.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with this opinion, appellant to have full costs.

The following opinion was filed February 15, 1946:

BARLOW, J. (*on motion for rehearing*). From the briefs filed on the motion for rehearing it is evident that the use of

the words "rescind" and "rescission" in the opinion has caused some confusion as to the law applicable. 5 Williston, Contracts (rev. ed.), p. 4061, sec. 1454A, in discussing the meaning of the words "rescind" and "rescission" says:

"'Rescind' and 'rescission' are words in ordinary use, and should have no different signification in legal terminology than they have in other connections. 'Rescind' means to abrogate or annul, and may be applied to a variety of transactions such as a vote, a transfer of property, or a contract. When and how such transactions may be rescinded is not part of the definition of the resulting rescission. There are other words by which the result may be described, and whether a contract is spoken of as terminated, abrogated, annulled, avoided, discharged, or rescinded is not in itself important. There are, however, several sources of unnecessary confusion in the use of these common words 'rescind' and 'rescission.'"

In the same subsection, quoting from Restatement, Contracts, we have the following:

". . . In many cases where a partly performed contract is rescinded by the act of one party for the fault of the other, restoration of what has been received, or its value, is not a condition qualifying the right to rescind."

What we said in this opinion was that the plaintiff Illges and interpleaded defendant Hamm had breached the contract to such an extent that the defendant Congdon had a right to terminate the contract, which he did. Plaintiff Illges and interpleaded defendant then brought an action for damages for alleged breach of contract. Defendant Congdon counterclaims for damages for alleged breach of contract on the part of Illges and Hamm. We hold he had a right to do this, and it did not constitute an election of remedies as he had already terminated the contract.

The only questions left to be determined are what damages, if any, Congdon suffered by reason of the breach of the contract on the part of Illges and Hamm, and the rights of the parties in the remaining assets of the joint enterprise in accordance with the terms of the contract which the court found had been entered into.

*By the Court.*—Motion denied with $25 costs.