ELIAS H. WOOD, executor, *vs.* WILLIAM B. BLISS CO. INC.

Suffolk.    November 14, 1939. — December 29, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Contract,* Modification, Consideration, Performance and breach, For license under patent.

A modification of an agreement giving a license under a patent, providing that, if the licensor failed within thirty days to secure license agreements with alleged infringers competing with the licensee, he would not seek further royalties provided in the original agreement, was supported by the consideration upon which the original agreement was made where it appeared that the original agreement required the licensor upon demand of the licensee promptly to prosecute infringers of the patent, that such infringements had occurred, that the licensee had demanded prosecutions but there had been none, and that the modification followed; the rights of the parties thereafter were to be determined in accordance with the modification.

BILL IN EQUITY, filed in the Superior Court on November 26, 1938. A final decree dismissing the bill was entered after a hearing by *Baker,* J. The plaintiff appealed.

*H. E. Cole,* for the plaintiff.

*E. Burke,* for the defendant.

RONAN, J. The plaintiff's testator, Joseph Wood (herein referred to as Wood), the holder of a patent for snipping and attaching bindings to tops of shoes, granted a non-

exclusive license on January 23, 1928, to a firm known as Wm. B. Bliss Jr. & Co. to manufacture, use and sell the patented article in consideration of the payment of royalties. The rights of the licensee with the consent of all parties were taken over by the defendant corporation upon its organization in July, 1928, and the corporation has since continued as if it were the original licensee. The license agreement obligated Wood, upon the demand of the licensee, promptly to bring suit against anyone infringing the patent and to prosecute diligently such suit to final judgment; and if the patent should be held to be invalid or any claim thereunder was held to be so limited by a court of last resort or by a lower court from whose decision no appeal was seasonably taken that the license would not thereafter afford substantial protection against competition in the manufacture and use of the binding, then no further royalties were to be paid by the licensee unless or until such adverse decision was reversed. The defendant paid the royalties until July 1, 1937. The defendant had learned in July, 1936, that a competitor was infringing the patent, and it so advised Wood. Complaints of the infringement of the patent were frequently made by the defendant to Wood, who promised to bring suits against the alleged infringers but never did. In August, 1937, the parties agreed upon a reduction in the rate of the royalty because the defendant had sustained a loss on account of this competition. Royalties were paid at this reduced rate until November 30, 1937, but none has since been paid. On October 30, 1937, the plaintiff, as attorney in fact for Wood, signed and delivered to the defendant an agreement "that in the event that I fail to produce within thirty days licenses from the present users of snipped or perforated binding . . . I will hereafter demand no royalty fees from Bliss and will permit them to snip binding without expense." The licenses referred to in this agreement were never secured. Wood died May 24, 1938. The bill, which was brought for an accounting and specific performance of the agreement of January 23, 1928, was dismissed, and the plaintiff's appeal brings the case here.

The evidence is not reported but the judge made full findings of fact. In addition to those already summarized he found that the failure of the plaintiff and Wood to bring suit against infringers "over an extensive period of time justified the defendant's refusal to pay royalties and excused it from performance," and that the agreement of October 30, 1937, was binding and relieved the defendant from further payment of royalties. If the decree is supported by the facts reported and is within the scope of the pleadings, it must be affirmed, otherwise it should be reversed. *Brodrick* v. *O'Connor*, 271 Mass. 240. *Knapp* v. *Meehan*, 287 Mass. 573.

The agreement of January 23, 1928, did not bar Wood from granting other licenses for the manufacture, use and sale of the patented article, and the parties agreed that, if other licenses were granted upon more favorable conditions than the defendant's license, then the defendant was entitled to have its license so modified as to include such conditions. That provision was for the benefit of the licensee and its purpose was to permit the licensee to compete upon an equal basis, in so far as the terms of its license were concerned, with all other licensees. *Raytheon Manuf. Co.* v. *Radio Corp. of America*, 286 Mass. 84. *Industrial Rayon Corp.* v. *Tubize Chatillon Corp.* 280 N. Y. 176. But the license agreement also required Wood to protect the licensee from competition by those who had no right to use the invention. The value of the privilege given to the defendant might be seriously impaired, if not entirely destroyed, by the unauthorized, indiscriminate and general use of the patent by firms competing with the defendant. If the use of the patent by its competitors was lawful in accordance with a license granted to them by Wood, then the defendant was entitled to use the patent on the most favorable terms granted to any of these licensees. If the persons using the patent refused to recognize the right of Wood, or contended that they were employing a method that did not amount to an infringement, then, unless provision was made to avert such competition, the defendant might not be able to continue under the license and success-

fully compete with those who were not burdened by the payment of royalties. Wood refused to prosecute any suits against those who, it was alleged, were unlawfully using his patent. He consulted an attorney and both he and his attorney were of the opinion that one of the defendant's competitors was infringing the patent. However, he did nothing further about it. The parties, in these circumstances, had the right, as the judge found they did, to modify the license agreement by reducing the rate of the royalty, and later by an agreement that the defendant was relieved from the further payment of royalties if Wood did not succeed within thirty days in securing the execution of license agreements with certain users of the patented article. The license agreement was modified by the subsequent amendments and the agreement as modified was substituted for the original agreement; the substituted agreement could be found to have been supported by the consideration upon which the original agreement rested. *Thomas* v. *Barnes*, 156 Mass. 581. *King* v. *Faist*, 161 Mass. 449. *Earnshaw* v. *Whittemore*, 194 Mass. 187. *Narragansett Amusement Co.* v. *Riverside Park Amusement Co.* 260 Mass. 265. *De-Blois* v. *Boylston & Tremont Corp.* 281 Mass. 498.

The rights of the parties were to be determined in accordance with the modified agreement, and the failure of Wood to secure license agreements from certain competitors of the defendant was so material as to warrant the refusal of the defendant to make further payments of royalties. *National Machine & Tool Co.* v. *Standard Shoe Machinery Co.* 181 Mass. 275. *Eastern Forge Co. of Massachusetts* v. *P. & F. Corbin*, 182 Mass. 590. *Dudley* v. *Wye*, 230 Mass. 350. *Hughes* v. *Rendle Corp.* 271 Mass. 208. *Bucholz* v. *Green Bros. Co.* 272 Mass. 49.

The royalty required to be paid under the license agreement was compensation for the use of the patented invention by the licensee, *Rockwood* v. *Commissioner of Corporations & Taxation*, 257 Mass. 572; *Hazeltine Corp.* v. *Zenith Radio Corp.* 100 Fed. (2d) 10, and the impairment of the value to the licensee of the use of the patented article, on account of the failure of the licensor to protect the licensee

from the unauthorized and wrongful use by others, as the licensor had agreed to do, was a breach going to the roots of the license agreement. See *Penley Bros. Co.* v. *Hall,* 84 Fed. (2d) 371. The parties apparently recognized the materiality of the licensor's failure to protect the use of his patented invention by preventing its unauthorized use by others or by requiring them to pay for such use in accordance with licenses to be granted to them, and accordingly entered into the substitute agreement expressly providing that the defendant would not be obliged to pay royalties unless license agreements were secured by Wood, within a designated period, from certain corporations, which allegedly were using the patented invention without Wood's permission. These license agreements were not obtained and the plaintiff, being unable to show the performance of this substituted agreement, is not entitled to relief. The decree dismissing the bill was right. *Anglim* v. *Sears-Roebuck Shoe Factories,* 255 Mass. 334. *Moskow* v. *Burke,* 255 Mass. 563. *Pitkin* v. *McCarthy,* 261 Mass. 114. *Corbett* v. *A. Freedman & Sons, Inc.* 263 Mass. 391. *Zarthar* v. *Saliba,* 282 Mass. 558.

*Decree affirmed.*